IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SHAWN D. PRIVRATSKY,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Defendant. | Case No. 21-cv-00390-DKW-KJM<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (2) DENYING DEFENDANT'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

This case involves an insurance dispute over damage to Plaintiff Shawn D. Privratsky's home and personal property caused by what Plaintiff believes was a lightning strike. The alleged cost of the repair work for this damage, at least at one point, was "as much as $325,000." Such costs, however, are not the subject of the instant motion and counter-motion for partial summary judgment. Instead, these motions quarrel over what has been described as an "extensively damaged" or "inoperable" gate operator that Privratsky contends has been wrongfully retained or converted by Defendant Liberty Mutual Fire Insurance Company. In other words, the lawyers in this action have elected to expend their own and their clients' presumably finite resources on what can best be described as a piece of burned out metal with likely little to no economic value.

Incredulous that they would do so, the Court inquired of counsel at the hearing on the pending cross-motions. Surely, the incentive beyond economic value must be driving the bus. Liberty's counsel, however, offered no explanation, armed only with the hollow excuse that counsel had just replaced Liberty's prior counsel days before the hearing. Privratsky's counsel fared little better, offering answers of no import. For instance, the supposed current *evidentiary* value of the gate operator, one offered explanation, is contradicted by the fact that both sides have now had *nearly three years* to examine the gate operator[1] and counsel confirmed that Privratsky's expert can already opine that the operator was not damaged in the manner offered by Liberty. As interesting, success with his pending motion will not return the operator to Privratsky's possession, even if further evidentiary review was needed. Additionally, Privratsky does not need to succeed on his claim for conversion, the subject of the pending motions and a second offered explanation, in order to establish any part of his bad faith claim, as counsel suggests.

Whatever the reason for the instant motions, having reviewed the briefing and evidence on the same, and as more fully discussed below, the Court agrees that

---

[1] The "lightning strike" or whatever it was responsible for Plaintiff's damage allegedly occurred on December 26, 2019.

Liberty has wrongfully converted Privratsky's gate operator and, thus, Privratsky is entitled to summary judgment with respect to his claim of conversion.[2] As a result, Privratsky's motion for partial summary judgment, Dkt. No. 55, is GRANTED, and Liberty's counter-motion for partial summary judgment, Dkt. No. 65, is DENIED.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In contrast, when the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). This means that the movant "must establish beyond

---

[2] The Court eagerly awaits the damages proof related to this conversion claim, particularly as the parties appear to agree that a gate operator, *in new condition*, is worth something like $1,500, and Liberty Mutual paid for the installation of a replacement operator long ago. Dkt. No. 72 at 3. The sense of continuing to expend client resources on an item of such value remains a mystery.

controversy every essential element" of its claim. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted). In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## RELEVANT PROCEDURAL BACKGROUND

Privratsky initiated this lawsuit with the filing of a Complaint against Liberty on September 16, 2021. Dkt. No. 1. Therein, Privratsky alleges that, on December 26, 2019, his home was struck by lightning that caused an electrical surge, resulting in "significant" damage to the home and personal property. *Id*. at ¶ 12. He further alleges that, after submitting an insurance claim to Liberty and Liberty "initially" agreeing to reimburse him, Liberty did not reimburse him for "most" of the damage. *Id*. at ¶¶ 15-16. The Complaint brings three causes of action for: (1) declaratory judgment that Privratsky's losses were covered by the insurance policy issued to him by Liberty; (2) bad faith; and (3) conversion of Privratsky's personal property, namely, his damaged gate operator.

On September 2, 2022, Privratsky filed a motion for partial summary judgment limited to his claim of conversion ("motion"). Dkt. No. 55. Privratsky argues that he is entitled to judgment on this claim because Liberty has refused to return his gate operator despite multiple demands from him to do so. *Id*. at 7. On

September 23, 2022, Liberty filed a joint counter-motion for partial summary judgment ("counter-motion") with respect to the conversion claim and a response to the motion. Dkt. No. 65. Liberty argues that it is entitled to judgment on the conversion claim because Privratsky consented to Liberty's possession of the gate operator, Liberty was warranted in assuming ownership of the operator, Liberty did not illegally use or abuse the operator, and Liberty did not wrongfully detain the operator. *Id*. at 7-11. On September 30, 2022, Privratsky filed a joint response to the counter-motion and reply in support of the motion. Dkt. No. 71. On October 7, 2022, Liberty filed a reply in support of the counter-motion. Dkt. No. 77. The parties have also filed concise statements of fact. Dkt. Nos. 56, 66, 72.

This Order now follows.

## DISCUSSION

### I. Motions for Partial Summary Judgment

The motion and counter-motion present two distinct, but interconnected questions: one legal and one factual. First, legally, the parties dispute the standard for a conversion claim under Hawaiʻi law. Second, factually, the parties disagree with respect to whom the undisputed facts support summary judgment on the claim. Because the legal question will guide the factual outcome, the Court begins with the former.

The parties' legal dispute concerns the nature of a conversion claim in Hawai'i. The State courts of Hawai'i have stated the following with respect to conversion: "Conversion encompasses the following acts: '(1) [a] taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'" *Freddy Nobriga Enters., Inc. v. Dep't of Haw. Home Lands*, 295 P.3d 993, 999 (Haw. Ct. App. 2013) (quoting *Tsuru v. Bayer*, 25 Haw. 693, 696 (1920)).

The parties disagree over whether the above-mentioned acts must *each* be proven to establish conversion−Liberty's position−or whether *any one*, if proven, will suffice− Privratsky's position. Having reviewed the parties' arguments and the cases to which they cite, the Court agrees with Privratsky that, in Hawai'i, *any one* of the four acts, if proven, will establish a claim for conversion. The principal reason is that decisions from Hawai'i's State courts clearly reveal that proving *each* of the acts is simply unnecessary.

For example, in *Nobriga*, the trial court awarded summary judgment to the defendant because the plaintiff "failed to meet the essential elements" of conversion. 295 P.3d at 999. The Intermediate Court of Appeals reversed, concluding that the "evidence presented established a prima facie case that [the defendant] committed acts (1) and (2) of this definition by rounding up and selling

[plaintiff's] cattle without his consent." *Id*.  In other words, because the evidence established the first two acts of conversion, summary judgment in favor of the defendant was inappropriate.  It would have been legally impossible for the Intermediate Court of Appeals to reach this determination if the plaintiff had been required to establish acts (3) and (4) as well−the position Liberty espouses here.

Similarly, in *Tsuru*, the Hawai'i Supreme Court explained as follows: "the general rule recognized by all the authorities is that where the original taking is lawful and there has been no illegal assumption of ownership or illegal user[,] a demand and refusal must be shown as evidence of a disposition to convert to the holder's own use or to divest the true owner of his property."  25 Haw. at 695-696.  In other words, when *none* of the first three acts have occurred, a claim for conversion can still exist solely by the occurrence of the fourth act.  Equally, the Hawai'i Supreme Court also explained that "where the taking itself is wrongful *or* there is an illegal assumption of ownership *or* an illegal user[,] a demand and refusal need not be provided."  *Id*. at 696 (emphasis added).  In other words, when the fourth act has not occurred, *any one* of the three other acts will suffice.

In reaching this finding, the Court acknowledges that, in this District, courts have stated that a claim of conversion involves four *elements*, suggesting that *all* four acts of conversion must be alleged to state such a claim.  However, it is

7

evident from those cases that none involved the court being asked to specifically find, as is the case here, whether the claim required each of the acts to be alleged or only one. Instead, as in *Jass v. CherryRoad Techs., Inc.*, 472 F. Supp. 3d 787 (D. Haw. 2020), a case over which the undersigned presided, the cases contain no discussion on any such matter.[3] Therefore, the Court does not find those decisions persuasive.

Having resolved the parties' legal question, it is unnecessary for the Court to resolve all of the parties' factual disputes because, as more fully discussed below, the undisputed facts here show that the fourth act of conversion−wrongful detention after demand−has occurred. *See Tsuru*, 25 Haw. at 695-696.

In his concise statement of facts, Privratsky asserts the following pertinent facts: (1) in 2017, he purchased a driveway gate operator; (2) on December 29, 2020, an individual retained by Liberty removed the gate operator from Privratsky's possession; (3) Privratsky requested the return of the gate operator on at least August 14, 16, and 17, 2021, and on June 28 and 29 and July 1, 2022; (4) Liberty refused to return the gate operator, as reflected in an email dated August 19, 2021 and a letter in July 2022; and (5) Liberty remains in possession of

---

[3] As it was in *Jass*, this may have been due to the fact that both sides argued as if each act needed to be alleged. This Court was, thus, not presented with the precise dispute at issue here.

the gate operator.  Privratsky's Concise Statement of Facts at ¶¶ 1, 4, 10, 14, 15-16, 18, Dkt. No. 56.  Liberty does not properly dispute any of these facts.  *See* Liberty's Concise Statement of Facts at ¶¶ 1, 4, 10, 14, 15-16, 18, Dkt. No. 66.[4]

Privratsky argues that these facts are sufficient to prove liability on his conversion claim because they reflect a demand for return of his property and refusal.  Dkt. No. 55-1 at 7.  The Court agrees.  Notably, as the Hawaiʻi Supreme Court explained in *Tsuru*, "*Any* act of dominion wrongfully exerted over property in denial of the owner's right or inconsistent with it amounts to a conversion."  25 Haw. at 698 (quotation omitted, emphasis added).  Moreover, "[c]onversion may be proved by demand and refusal of possession…."  *Id*.  That is precisely what has occurred here: demand (on repeated occasions) and refusal (on repeated occasions).

---

[4] The only one of the above-stated facts that Liberty does dispute is the assertion that it refused to return the gate operator in an email dated August 19, 2021.  Dkt. No. 66 at ¶ 15.  Liberty, however, cites no evidence to support this dispute.  *See id*.  Moreover, the email to which Privratsky cites, Dkt. No. 56-12, reflects that Liberty's counsel was asked about the return of the gate operator and stated that Liberty was storing the same.  In other words, Liberty did not return the gate operator when asked.  Thus, the Court does not consider this fact in dispute.  Further, it is non-sensical for Liberty to claim otherwise.  If Liberty was willing to return the gate operator at any time up to the date of this order, Privratsky's conversion claim and related motion might well be moot or, at least, mitigated in value.  Indeed, defense counsel could have indicated that willingness even during oral argument and did not.  Obviously, Liberty is and has been refusing to return the gate operator, regardless of its willingness to concede the point.

Liberty briefly contends otherwise, emphasizing that conversion requires a *wrongful* detention and, here, there is no such thing because it was "understood and agreed upon by the parties that the gate operator was being retained [by Liberty] for safekeeping and the preservation of evidence." Dkt. No. 65-1 at 10. Even if true, though, the foregoing relates to the first act of conversion: whether the gate operator was originally taken with or without consent. Further, Liberty's purportedly altruistic intent in preserving a piece of evidence, to the extent that is what Liberty believes has been its purpose, is irrelevant. *See Nobriga*, 295 P.3d at 1000 ("The defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant.") (quotation omitted). Put another way, under Liberty's construction of conversion, it would be fine for Person A to take possession of an item for Person B for safekeeping while Person B is traveling and then, when Person B returns and asks for the item back, for Person A to refuse to return it because he believes that the item will be safer in his possession. Neither the law nor common sense work that way, and the fact that the item in this case may have some usefulness in an insurance dispute makes no difference.

Therefore, in light of the undisputed evidence the Court GRANTS Privratsky's motion for partial summary judgment, Dkt. No. 55, and DENIES Liberty's counter-motion for partial summary judgment, Dkt. No. 65.

## II.     Emails from Counsel to the Court

Finally, the Court is compelled to address a concerning and unique, at least to the undersigned, situation that has occurred in this case since the hearing on the motions for partial summary judgment.   At that hearing, the Court concluded by encouraging the parties to resolve their differences over the subject matter of the motions without the need for a ruling from the Court.   That is because the expenditure of further resources on the part of everyone over an item of questionable and no obvious value appeared to make little sense.   The Minutes of the hearing then stated: "By October 21, 2022, counsel is directed to notify the Court whether issues have been resolved or ruling on the motions is necessary." Dkt. No. 79.

In untold number of both civil and criminal cases, the Court has issued similar instructions: to notify the Court of the status of the case.   Never in any of these cases, until this one, has any counsel emailed the undersigned's *personal* work email account in order to convey the status of the case.   Counsel in this case, broke that streak, emailing the undersigned's personal work email address not once or twice, but *three* times with increasingly long and tortuous accounts of their versions of events.   *See* Dkt. Nos. 82, 84, 86.

*Email correspondence with the Court is unacceptable.* Not just for the obvious distraction it poses, but, more importantly, for the silence it leaves on the public docket as to the status of the case. Put simply, in a counseled case such as this one, it is not the undersigned's responsibility to take emails sent by counsel and present them to the Clerk's Office for docketing on the public record, as the undersigned has done. *Id.* Instead, the parties, whether jointly or individually, should be filing brief status updates *on the docket* of this case to convey information related to such things as those discussed at the October 21, 2022 hearing. *They should <u>never</u> email the undersigned's personal work email address with regard to pending litigation.*[5]

## **CONCLUSION**

For the reasons set forth herein, the Court (1) GRANTS Privratsky's motion for partial summary judgment, Dkt. No. 55, and (2) DENIES Liberty's counter-motion for partial summary judgment.

IT IS SO ORDERED.

DATED: October 27, 2022 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

[5] In addition, the parties should <u>only</u> email the Court's orders inbox when specifically instructed to do so or when submitting orders and/or stipulations for approval.