IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHAWN D. PRIVRATSKY, | CIV. NO. 21-00390 DKW-RT |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION FOR ATTORNEYS FEES |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant. | |

**FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART DEFENDANT LIBERTY MUTUAL FIRE
INSURANCE COMPANY'S MOTION FOR ATTORNEYS FEES**

Before the Court is *Defendant Liberty Mutual Fire Insurance Company's*

("Defendant") *Motion for Attorneys* [sic] *Fees* ("Fee Motion"), filed on August 25,

2023.  ECF No. 385.  The Defendant seeks attorneys' fees under Hawaii Revised

Statutes ("Haw. Rev. Stat.") § 607-14 for work performed by its attorneys in

litigating this case.  Haw. Rev. Stat. § 607-14 awards fees to a prevailing party in

cases that are in the nature of an assumpsit.  The Defendant argues that it is the

prevailing party in this case, this case is in the nature of an assumpsit,

apportionment is not possible because the Plaintiff's claims are inextricably linked,

its attorneys and paralegals performed a total of $1,742,745.00 of legal work in this

case (ECF No. 385-1 at PageID.11203), and after applying the required twenty-five percent cap under Haw. Rev. Stat. § 607-14, the Defendant is entitled to $650,777.67 in attorneys' fees (*Id.* at 11218). The Defendant also argues that it should be awarded GET in the amount of $82,083.29 (*Id.* at 11210) and non-taxable costs in the amount of $304,596.74 (*Id.* at 11213).

The Court elects to decide the *Fee Motion* without a hearing pursuant to Rule 7.1(c) of the *Local Rules of Practice for the United States District Court for the District of Hawaii* ("Local Rules" or "LR").

After careful consideration of the *Fee Motion*, the parties' submissions, records in this case, and applicable law, the Court **FINDS** that the Defendant is the prevailing party in this case, this case is in the nature of an assumpsit, certain fees attributable to the non-assumpsit claim can be apportioned, and the amount of reasonable attorneys' fees requested exceeds the statutory maximum under Haw. Rev. Stat. § 607-17. The Court **FINDS** that the statutory maximum in this case is $308,358.25. As a result, the Court **RECOMMENDS** that the *Fee Motion* be **GRANTED IN PART** and **DENIED IN PART**. The Court **RECOMMENDS** that the Defendants be awarded a total of $308,358.25 in attorneys' fees, and the Defendants request for attorneys' fees exceeding $308,358.25, General Excise Tax ("GET") in the amount of $52,154.67, and non-taxable costs in the amount of $304,596.74 be **DENIED** for exceeding the statutory maximum.

## BACKGROUND

The Court shall only include background facts relevant to the *Fee Motion* because the parties and the court are familiar with the proceedings in this case. Plaintiff Shawn D. Privratsky ("Plaintiff") filed his *Complaint* on September 16, 2021, which alleged three counts against the Defendant: (1) Count I: Declaratory Judgment ("Count I"); (2) Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing ("Count II"); and (3) Count III: Conversion ("Count III"). ECF No. 1. The Plaintiff purchased insurance on his home from the Defendant. ECF *Id*. at PageID.3.

Plaintiff filed a *Motion for Partial Summary Judgment as to Count III of the Complaint for Conversion* ("Plaintiff's First Motion") on September 2, 2022. ECF No. 55. Defendant filed a *Counter Motion for Partial Summary Judgment* ("Defendant's Counter Motion") on September 23, 2022. ECF No. 65. On October 27, 2022, the district court granted *Plaintiff's First Motion* and denied *Defendant's Counter Motion*. ECF No. 88. The district court found that Plaintiff was entitled to summary judgment with respect to *Count III*, conversion. *Id*.

On January 27, 2023, Plaintiff filed a *Motion for Partial Summary Judgment re Coverage for Lightning* ("Plaintiff's Second Motion"). ECF No. 132. On that same day, Defendant also filed a *Motion for Partial Summary Judgment* ("Defendant's Second Motion"). ECF No. 134. On March 20, 2023, the district

court issued its *Order (1) Denying [Plaintiff's Second Motion] and (2) Granting in Part and Denying in Part [Defendant's Second Motion]*.  ECF No. 201.  The district court found that the Plaintiff may not "seek damages for the alleged diminution in value in the sale of his property" and "'loss of use' damages[.]" ECF No. 201 at PageID.3022-3023.

On March 30, 2023, Plaintiff filed a *Motion for Reconsideration of Order (1) Denying Plaintiff's Motion for Partial Summary Judgment and (2) Granting in Part and Denying in Part [Defendant's] Motion for Partial Summary Judgment [Dkt. No. 201]* ("Motion for Reconsideration").  ECF No. 205.  On May 12, 2023, the district court granted in part and denied in part the *Motion for Reconsideration*. ECF No. 296.

A jury trial was held in this case and commenced on May 30, 2023.  ECF No. 320.  A verdict was reached on June 14, 2023.  ECF No. 349.  The jury did not find that Defendant breached its duty to pay benefits owed under the insurance policy.  ECF No. 350.  The jury found that Plaintiff failed to prove that any benefits were owed under the insurance policy and that Plaintiff failed to prove that any damages should be awarded for the conversion of the gate operator.  *Id*. However, the jury found that Defendant acted in bad faith but that the Plaintiff failed to prove that the Defendant's bad faith caused damage to Plaintiff.  *Id*.

Judgment in this case was entered on June 16, 2023.  ECF No. 360.  On June

30, 2023, the Defendant filed a *Bill of Costs*.  ECF No. 361.  On August 31, 2023,

this Court issued its *Findings and Recommendation to Deny [Defendant's] Bill of

Costs* ("F&R").  ECF No. 388.  The Defendant filed motion for reconsideration

(ECF No. 392) of the F&R, which this Court denied (ECF No. 394).  The

Defendant then objected to the Court's F&R.  ECF No. 395.  The district court

overruled the objection and adopted this Court's F&R.  ECF No. 397.  On August

25, 2023, the Defendant filed this *Fee Motion*.  ECF No. 385.  On that same day,

the Defendant filed an *Errata to [the Fee Motion]* in order to "correct the caption

and add Exhibits X And Y" to an affidavit filed in support of the *Fee Motion*.  ECF

No. 386.  On September 1, 2023, the Plaintiff filed an *Opposition to [the Fee

Motion]* ("Opposition").  ECF No. 390.  On September 8, 2023, the Defendant

filed a *Reply in Support of [the Fee Motion]*.  ECF No. 391.

## DISCUSSION

## I.     Meet and Confer Requirement Under the Local Rules

Local Rule 54.2(d) requires that the parties, prior to the Defendant filing a

*Fee Motion*, must "meet and confer in a good faith attempt to agree on the amount

of fees or related nontaxable expenses that should be awarded."  Local Rule

54.2(e) requires that "[i]f any matters remain in dispute after" the meet and confer,

the parties must prepare a joint statement that includes certain issues enumerated

under the rule.  Local Rule 54.2 also provides the court with the discretion to deny the *Fee Motion* with prejudice if the Defendant fails to follow the rules governing fee motions.  LR54.2(h) ("Failure to follow [the Local Rules] regarding Fee Motions and/or related nontaxable expenses may, in the court's discretion, result in the denial of such motions with prejudice.").

Defense counsel claims that the parties met and conferred on August 16, 2023.  ECF No. 391-1 at PageID.14322.  The Defendant also attached a *Joint Statement Pursuant to Local Rule 54.2(E)* ("Joint Statement") to the *Fee Motion*. ECF No. 385-28.  The Court notes that the *Joint Statement* consists of two pages, most of which is an enlarged chart depicting the fees requested, and merely states that the Plaintiff takes the position that the Defendant "is not entitled to an award of fees or non-taxable expenses."  *Id*.

The Plaintiff argues that the Defendant failed to comply with the meet and confer requirements under Local Rule 54.2 because the Defendant (1) provided billing records but did not specify the timekeeping for which compensation will and will not be sought (ECF No. 390 at PageID.13409); (2) failed to provide the Plaintiff with its billing guidelines and retainer agreement with defense counsel (*Id*.); (3) failed to timely provide the Plaintiff with billing that would not be sought (*Id*. at 13410); and (4) failed to inform Plaintiff what amount of attorneys' fees it would seek in the *Fee Motion* (*Id.*).

6

The Defendant explains that when defense counsel initially sent the Plaintiff its invoices on June 30, 2023, "[the Defendant] intended to claim all of its invoices as reasonable fees (excepting, obviously, invoices marked as 'no-charge')."  ECF No. 391 at PageID.14302.  The Defendant claims that the Plaintiff had received the billing records "47 days before the parties' final conference" on August 16, 2023. *Id.* at 14303.  The Defendant further explains that as part of the conferral process, the Defendant elected to withdraw certain billing it had initially intended to seek, including fees that the Defendant had not paid, and fees incurred before the *Complaint* was filed.  *Id.* at 14305.  Based on the Defendant's explanations, the Court finds that there was indeed a meaningful meet and confer in compliance with Local Rule 54.2.  Although discussions seem to have been contentious and the parties could not agree on many issues, the parties had indeed engaged in discussions which ultimately resulted in the Defendant's decision to reduce the amount of fees being requested in the *Fee Motion*.  Accordingly, the Court does not find that denying the *Fee Motion* with prejudice is appropriate in this case.

## II.    Attorneys' Fees Under Haw. Rev. Stat. § 607-14

This case is before this Court under diversity jurisdiction, 28 U.S.C. § 1332. ECF No. 1 at PageID.2.  A federal court sitting in diversity applies state law to determine whether a party is the prevailing party entitled to attorneys' fees and costs.  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)

(citations omitted).  In this case, Hawaii law is applicable.  Under Hawaii law,

attorneys' fees cannot be awarded as damages or costs unless provided by statute,

stipulation, or agreement.  *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111

Hawaiʻi 286, 305, 141 P.3d 459, 478 (2006) (citing *Weinberg v. Mauch*, 78

Hawaiʻi 40, 53, 890 P.2d 277, 290 (1995)).  As such, the Defendant seeks

attorneys' fees under Haw. Rev. Stat. § 607-14, which states in relevant part:

> In all the courts, in all actions in the nature of assumpsit and in all
> actions on a promissory note or other contract in writing that provides
> for an attorney's fee, there shall be taxed as attorneys' fees, to be paid
> by the losing party and to be included in the sum for which execution
> may issue, a fee that the court determines to be reasonable; provided
> that the attorney representing the prevailing party shall submit to the
> court an affidavit stating the amount of time the attorney spent on the
> action and the amount of time the attorney is likely to spend to obtain a
> final written judgment, or, if the fee is not based on an hourly rate, the
> amount of the agreed upon fee.  The court shall then tax attorneys' fees,
> which the court determines to be reasonable, to be paid by the losing
> party; provided that this amount shall not exceed twenty-five per cent
> of the judgment.

In order to award reasonable attorneys' fees under Haw. Rev. Stat. § 607-14, the

Court must determine whether (1) the moving party is the prevailing party; (2) the

action is in the nature of an assumpsit; (3) the hourly rate and fees requested are

reasonable; (4) the requested costs are reasonable; and (5) the fees do not exceed

twenty-five (25) percent of the judgment.  The Court shall address each in turn.

### A.  <u>The Defendant is the Prevailing Party</u>

The Defendant must be the prevailing party in this case in order to be entitled to its reasonable attorneys' fees pursuant to Haw. Rev. Stat. § 607-14. "[I]n general, a party in whose favor judgment is rendered by the district court is the prevailing party in that court . . . " *MFD Partners v. Murphy*, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992) (citation omitted).  The judgment need not result from a ruling on the merits. *Ranger Ins. Co. v. Hinshaw*, 103 Hawaiʻi 26, 31, 79 P.3d 119, 124 (2003) (quoting *Blair v. Ing*, 96 Hawaiʻi 327, 331, 31 P.3d 184, 189 (2001)).  However, "[u]nder Hawaiʻi law, a party may be deemed the 'prevailing party' entitled to an award of statutory attorneys' fees under Haw. Rev. Stat. § 607-14 without successfully litigating the merits of the party's claim." *Kona Enterprises,* 229 F.3d at 887 (citing *Wong v. Takeuchi*, 88 Hawaiʻi 46, 961 P.2d 611, 614 (1998) (holding a defendant to be the "prevailing party" within the meaning of Haw. Rev. Stat. § 607-14 even though the plaintiff's action was dismissed on summary judgment on laches or statute of limitations grounds)).

In this case, as to *Count I* and *Count II*, the jury did not find that the Defendant breached its duty to pay benefits owed under the insurance policy and found that Plaintiff failed to prove that any benefits were owed under the insurance policy.  ECF No. 350.  Although the jury found that Defendant acted in bad faith, the jury also found that the Plaintiff failed to prove that the Defendant's bad faith

caused damage to the Plaintiff.  *Id*.  The Plaintiff prevailed on *Count III*, however, the Plaintiff failed to establish damages under *Count III*.  ECF No. 88.

Under Hawaii law, "[Hawaii] courts focus on which party prevailed on the 'disputed main issue'" when determining the prevailing party in a case.  *In re Hoopai*, 581 F.3d 1090, 1102 (9th Cir 2009) (citing *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.*, 58 Haw. 606, 620, 575 P.2d 869, 879 (1978)).  *Count I* sought to determine whether the Defendant breached its contract or insurance policy by failing to pay the Plaintiff benefits under the policy.  ECF No. 1 at PageID.10.  In order to prevail on *Count II*, the breach of the implied covenant of good faith and fair dealing claim, Plaintiff needs to establish bad faith based on the Defendant's breach of contract by failing to pay the Plaintiff benefits under the policy.  In other words, the principal issue underlying *Count II* is dependent upon the main issue in *Count I*, whether the Defendant breached its contract by failing to pay under the policy.  The main issue in this litigation is thus *Count I*, and the Defendant was the prevailing party on this main disputed issue.  Accordingly, the Court finds that the Defendant is the prevailing party in this case.

## B.    This Case is in the Nature of an Assumpsit

The Court may not award fees under Haw. Rev. Stat. § 607-14 unless this case is in the nature of an assumpsit.  In order for the prevailing party to be entitled to attorneys' fees under Haw. Rev. Stat. § 607-14, the Court must thus determine

that this action is in the nature of an assumpsit. "Assumpsit is a common law form of action which allows *for the recovery of damages* for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *808 Dev., LLC v. Murakami*, 111 Hawaiʻi 349, 366, 141 P.3d 996, 1013 (2006) (citing *Blair v. Ing*, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189 (2001)). "Whether 'assumpsit' exists so as to trigger HRS § 607-14 depends upon the 'essential character of the underlying action in the trial court.'" *Kamalu v. Paren, Inc.*, 110 Hawaiʻi 269, 275, 132 P.3d 378, 384 (2006) (citing *Leslie v. Estate of Tavares*, 93 Hawaiʻi 1, 4, 994 P.2d 1047, 1050-51 (2000)). "The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." *Blair*, 96 Hawaiʻi at 332, 31 P.3d at 189 (citing *Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir. 1997)) (citation omitted).

The parties do not dispute that *Count II* (Breach of Implied Covenant of Good Faith and Fair Dealing) and *Count III* (Conversion) are not in the nature of an assumpsit. *See* ECF No. 385-1 at PageID.11196 & ECF No. 390 at PageID.13412. The Court agrees. *See Young v. Geico Indem. Co.*, Civ. No. 08-00171 JMS-KSC, 2009 WL 3049640, at *5 (D. Haw. Sept. 23, 2009) (citing *Enoka v. AIG Hawaii Insurance Co., Inc.*, 109 Hawaiʻi 537, 128 P.3d 850 (2006)) (finding that a breach of duty of good faith and fair dealing claim is not in the

nature of an assumpsit); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, Civ. No.

09-00181 LEK-KSC, 2015 WL 881577, at *9 (D. Haw. Feb. 27, 2015)

("Conversion sounds in tort."). However, the parties disagree as to whether

*Count I* is in the nature of an assumpsit. The Plaintiff argues that *Count I* sought

declaratory judgment and "does not mention assumpsit. It also does not mention

breach of contract. Instead, *Count I* repeatedly refers to a declaratory judgment[.]"

ECF No. 390 PageID.13412-13413.

It is true that Hawaii courts have found that declaratory judgments are not in

the nature of an assumpsit. *See Bruser v. Bank of Hawaii*, Civil No. 14-00387

LEK-RLP, 2017 WL 1534189, at *5 (D. Haw. Apr. 27, 2017) (citing *Chock v.

Gov't Emps. Ins. Co.*, 103 Hawaiʻi 263, 268, 81 P.3d 1178, 1183 (2003)) ("It is

well established that '[a]n action that seeks only a declaration as to a party's rights

or responsibilities, even if factually implicating a contract, is not in the nature of

assumpsit."). It is also true that "the mere fact that a claim 'relate[s] to a contract

between the parties does not render a dispute between the parties an assumpsit

action.'" *Au v. Funding Group, Inc*., 933 F. Supp. 2d 1264, 1271 (D. Haw. 2013)

(citing *TSA Int'l, Ltd. v. Shimizu Corp*., 92 Hawaiʻi 243, 264, 990 P.2d 713, 734

(1999)).

However, Hawaii courts have also made it clear that in determining whether

an action is in the nature of the assumpsit, "the focus of [the] analysis is thus on the

'substance' of the action, 'rather than [on] the formal language employed or the form of the pleadings." *Kona Enterprises, Inc. v. Est. of Bishop*, 229 F.3d 877, 884 (9th Cir. 2000) (citation omitted); *see also S. Utsunomiya Enters., Inc. v. Moomuku Country Club,* 76 Hawaiʻi 396, 400, 879 P.2d 501, 505 (1994). "Hence, the mere use of tort language in a complaint does not control the characterization of the action as either in assumpsit or in tort." *Kona Enterprises*, 229 F.3d at 884. "Instead, '[t]he character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought.'" *Id.* (citing *Leslie v. Estate of Tavares*, 93 Hawaiʻi 1, 6, 994 P.2d 1047, 1052 (2000)) (citation omitted).

In this case, the district court reasoned that *Count I* of the *Complaint* is essentially a breach of contract claim. *See* ECF No. 385-3 at PageID.11364-11365. The district court noted that the jury instructions submitted by the parties did not contain instructions regarding declaratory relief and instead, the parties treated *Count I* as a breach of contract claim. *Id.* The district court further noted that the verdict forms submitted by the parties also characterize *Count I* as a breach of contract claim. *Id.* at 11364-11366. Indeed, the fact that damages were sought based on the benefits owed under the policy characterizes this action as being brought in the nature of an assumpsit. The facts alleged in the *Complaint* also discuss the damages to the Plaintiff's home and personal property from the

13

lightning storm in order substantiate any damages owed under the policy.  ECF No.

1 at PageID.4-7.  Moreover, even if uncertainty existed as to whether or not this

case is in the nature of an assumpsit, "[i]t is well-established that '[w]hen there is a

doubt as to whether the action is in assumpsit or tort, there is a presumption that

the suit is in assumpsit.'"  *Au v. Funding Grp., Inc.*, 933 F. Supp. 2d 1264, 1271

(D. Haw. 2013) (citations omitted).  Accordingly, the Court finds that this action is

in the nature of an assumpsit.

### 1.   <u>Apportionment Between Assumpsit and Non-Assumpsit Claims</u>

If practicable, the court must apportion the fees claimed between assumpsit

and non-assumpsit claims.  *Blair v. Ing*, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189

(2001) (citing *TSA Int'l Ltd.*, 92 Hawaiʻi at 264, 990 P.2d at 734) (citation

omitted).  Here, the Court and the parties agree that *Count II* and *Count III* are non-

assumpsit claims.[1]  However, the Court finds that *Count I* and *Count II* are

inextricably intertwined such that apportioning the fees related to *Count I* as

opposed to *Count II* is not practicable.  Here, the factual allegations in *Count I*

overlap with the factual allegations in *Count II* such that the work performed on

each allegation cannot be neatly divided among the two claims.

---

[1] The Court's determination that *Count II*, standing alone, is a non-assumpsit claim
does not contradict the fact that this Court previously found that this case can be
characterized as being in the nature of an assumpsit.  Such characterization stems
from the overlap of facts alleged in support of *Count I* and *Count II*.

However, *Count III*, the conversion claim, involves specific and separate facts from *Count I* and *Count II* in that the focus of *Count III* is on the driveway gate operator as opposed to the breach of contract issue. The Defendant argues that apportionment is impracticable because "all three claims arose out of the same course of events: [Plaintiff's] claim under his insurance policy and [Defendant's] ultimate denial of his claim." ECF No. 385-1 at PageID.11209. However, this is not true of *Count III*. In order to establish conversion, Plaintiff must show

> [a] distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with [that person's] rights therein, such as tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of possession permanently or for an indefinite term.

ECF No. 55-1 at PageID.255-256 (citation omitted). The facts needed to establish *Count III* are independent and separate from the facts alleged in support of *Count II* and *Count III*, which includes whether the Defendant breached its contract by failing to pay under the insurance policy. The Plaintiff has provided a list of billing entries in Exhibit 30 to its *Opposition* that shows the time defense counsel spent on *Count III*, the conversion claim, that should be apportioned. ECF No. 390-33. The Court has carefully reviewed Exhibit 30 and disagrees with the Plaintiff that the following entries should be apportioned:

| Date | Timekeeper | Hours Billed | Description of Services Rendered |
|---|---|---|---|
| 9/6/22 | Ando, Nadine Y | 0.3 | Dispositive Motions - Draft email to Liberty Mutual Team re: **REDACTED** |
| 9/22/22 | Ando, Nadine Y | 1.0 | Dispositive Motions - Team call with Liberty Mutual to discuss **REDACTED** |
| 9/23/22 | Ando, Nadine Y | 0.8 | Dispositive Motions - Emails to/from J. Ellis re: Redacted **REDACTED** |
| 9/20/22 | Nakagawa, Dara | 1.4 | Dispositive Motions - Research caselaw re: Redacted **REDACTED** |

The Court elects to exclude these entries when deducting fees related to *Count III* because the entries are not clear as to whether the time billed was in fact for work performed on *Count III*. The Court shall deduct the fees listed in Exhibit 30 from the calculation of reasonable fees under Haw. Rev. Stat. § 607-14 as follows:

| Timekeeper | Hours Deducted |
|---|---|
| Ando, Nadine Y. | 21.4 |
| Futa, Janice T. | 2.7 |
| Jenkins, Forest B. | 9.2 |
| Kim, Antony J. | 0.3 |
| Nakagawa, Dara S. | 29.3 |
| Saffery, Edmund K. | 4.4 |
| Simbahon, Alyssa | 4.6 |
| Tani, Jason M. | 7.4 |

After deducting the hours expended on *Count III*, the attorneys' fees are as follows:

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| Attorneys | | | |
| Chen, Daniel M. | $300.00 | 22.2 | $6,660.00 |
| DiCristofaro, Deborah A. | $200.00 | 18.7 | $3,740.00 |
| Ezer, Matthew D. | $200.00 | 555.3 | $111,060.00 |

| | | | |
|---|---|---|---|
| Futa, Janice T. | $300.00 | 1,052.3 | $315,690.00 |
| Harada, Bryan M. | $200.00 | 265.4 | $53,080.00 |
| Jenkins, Forest B. | $200.00 | 509.6 | $101,920.00 |
| Khuy, Kenory E. | $200.00 | 833.7 | $166,740.00 |
| Kido, Nicholas K. | $200.00 | 52.1 | $10,420.00 |
| Kim, Antony J. | $200.00 | 192.1 | $38,420.00 |
| Saffery, Edmund K. | $350.00 | 521.4 | $182,490.00 |
| Simbahon, Alyssa M. | $200.00 | 486.3 | $97,260.00 |
| Tani, Jason M. | $350.00 | 1,122.1 | $392,735.00 |
| Ando, Nadine Y. | $300.00 | 411.7 | $123,510.00 |
| Nakagawa, Dara S. | $200.00 | 147.9 | $29,580.00 |
| Paralegals | | | |
| Charboneau, M. Susan | $125.00 | 183.7 | $22,962.50 |
| Correa, Jennifer G. | $125.00 | 202.3 | $25,287.50 |
| Miyashiro, Elsonne N.M. | $125.00 | 104.3 | $13,037.50 |
| Paekukui, Nelly | $125.00 | 156.9 | $19,612.50 |
| Yoshida, Heather K. | $125.00 | 0.8 | $100.00 |
| Lee, Erin O. | $125.00 | 67.2 | $8,400.00 |
| Total: | | 6,906.0 | $1,722,705.00 |

## C.  <u>Reasonable Attorneys' Fees</u>

The Court now turns to the reasonableness of the attorneys' fees requested.

Hawaii courts calculate the reasonableness of attorneys' fees using a method nearly

identical to the traditional "lodestar" calculation, which multiplies (1) the number

of hours reasonably expended by (2) a reasonable hourly rate.  *Sheehan v. Centex

Homes*, 853 F. Supp. 2d 1031, 1041 (D. Haw. 2011) (citing *Hensley v. Eckerhart*,

461 U.S. 424, 433 (1983); *DFS Group L.P. v. Paiea Props.*, 110 Hawaiʻi 217, 222,

131 P.3d 500, 505 (2006)); *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawaiʻi

408, 446, 32 P.3d 52, 90 (2001).

The lodestar amount may also be adjusted based on an evaluation of the

following factors, which have not been subsumed in the lodestar calculation:

(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

(2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients;

(3) the customary charges of the Bar for similar services;

(4) the amount involved in the controversy and the benefits resulting to the client from the services;

(5) the contingency or the certainty of the compensation; and

(6) the character of the employment, whether casual or for an established and constant client.

*Sheehan*, 853 F. Supp. 2d at 1041 (citing *Chun v. Bd. of Trs. of Emps.' Ret. Sys. Of*

*Haw.* ("Chun II"), 106 Hawaiʻi 416, 435, 106 P.3d 339, 358 (2005)) (citations

omitted).  There is a strong presumption that the lodestar amount calculated is

reasonable.  *See Schefke*, 96 Hawaiʻi at 443, 32 P.3d at 87, n .72 (citing *City of*

*Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (citation omitted).

## 1. <u>Reasonable Hourly Rate</u>

In order to calculate the Lodestar amount, the Court must first determine

whether the hourly rates requested for work performed by the Defendant's

attorneys and paralegals are reasonable. "Hawaii courts consider the reasonable hourly rate in a manner virtually identical to the traditional lodestar formulation, and some Hawaii state courts have considered federal law in determining a reasonable hourly rate." *Sheehan*, 853 F. Supp. 2d at 1042 (citing *County of Haw. v. C & J Coupe Family Ltd. P'ship*, 120 Hawaiʻi 400, 407, 208 P.3d 713, 720 (2009); *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). This Court finds that federal case law regarding the determination of a reasonable hourly rate is instructive in this case. *See Sheehan*, 853 F. Supp. 2d at 1042.

The reasonable hourly rate is determined by assessing the prevailing market rate in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)); *Webb v. Ada County*, 285 F.3d 829, 840 (9th Cir. 2002); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)). The relevant community is the forum in which the district court sits. *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). In this case, the relevant community is the District of Hawaii.

"It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts*, 938 F.3d at 1024 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (Camacho, 523 F.3d at 980). "The burden is

on the fee applicant 'to produce satisfactory evidence' of the prevailing market

rates." *Sam K. ex rel. Diane C. v. Hawaii Dept. of Educ.*, 788 F.3d 1033, 1041 (9th

Cir. 2015) (citing *Blum*, 465 U.S. at 896, n. 11). In addition to their own

statements, attorneys are required to submit additional evidence that the rate

charged is reasonable. *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th

Cir. 1987). *See also Camacho*, 523 F.3d at 980 ("To inform and assist the court in

the exercise of its discretion, the burden is on the fee applicant to produce

satisfactory evidence—in addition to the attorney's own affidavits—that the

requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience and reputation").

The Court has carefully reviewed the Defendant's *Affidavit of Janice T. Futa*

("Futa Affidavit") (ECF No. 385-2) and Declaration of Jerold T. Matayoshi

("Matayoshi Declaration") (ECF No. 385-25), and the Plaintiff's *Declaration of*

*Dennis W. King* ("King Declaration") (ECF No. 390-1). Notably, the Plaintiff's

*King Declaration* supports the hourly rates requested for Defendant's attorneys.

*See* ECF No. 390-1 at PageID.13435 ("In my opinion the hourly rates charged by

Liberty's attorneys are reasonable.").

Attorney Daniel M. Chen has been an attorney since 2001, is a partner at

Goodsill Anderson Quinn & Stifel, a Limited Liability Law Partnership LLP

("Goodsill"), and has represented plaintiffs in state and federal courts.  ECF No.

385-2 at PageID.11229-11230.

Attorney Deborah A. DiCristofaro has been an attorney since 2021, clerked

for a federal magistrate judge, is an associate at Goodsill and was involved in

providing research and analysis on issues arising in various motions and at trial in

this case.  *Id*. at 11233-11234.

Attorney Matthew D. Ezer has been an attorney since 2013, has clerked for

state and federal judges, has extensive experience in complex civil litigation, is an

attorney at Goodsill, served as third chair at trial and was also heavily involved in

motions practice in this case.  *Id*. at 11230-11231.

Attorney Janice T. Futa has been practicing since 1976, has extensive trial

experience, has worked in both civil and criminal litigation and is a partner at

Goodsill.  *Id*. at 11228.

Attorney Bryan M. Harada has been an attorney since 2006, has extensive

experience in civil litigation, practiced law in both state and federal courts in

Hawaii  and is an attorney with Goodsill.  *Id.* at 11231.

Attorney Forest B. Jenkins has been an attorney since 2012, began as a state

prosecutor, has experience in civil litigation, is a partner at Goodsill, and in this

case, he took depositions, drafted motions, and oversaw the discovery process.  *Id.*

at 11230.

Attorney Kenory E. Khuy has been a law clerk since 2019, clerked for various state court judges, and is an associate with Goodsill. *Id*. at 11232. In this case, she was involved in the discovery process, drafting motions, preparing for trial and the trial. *Id*. at 11232-11233.

Attorney Nicholas K. Kido has been an attorney since 2020, is an associate at Goodsill, and drafted a motion in limine for the Defendant. *Id*. at 11233.

Attorney Antony J. Kim has been an attorney since 2019, clerked for a state court judge, is an associate at Goodsill, was involved in this case by drafting motions, and was involved in the discovery process. *Id*. at 11233.

Attorney Edmund K. Saffery has been an attorney for twenty-seven years, is a partner at Goodsill, has extensive experience in litigation, has practiced, *inter alia*, insurance defense and bad faith litigation and is a lead partner in this case. *Id*. at 11228-11229.

Attorney Alyssa M. Simbahon has been an attorney since 2017, was an attorney at Goodsill, and was involved in the discovery process, drafting motions, preparing for trial and the trial in this case. *Id*. at 11232.

Attorney Jason M. Tani has been an attorney since 1984, is a partner at Goodsill with extensive trial experience, and is a lead trial attorney in this case. *Id*. at 11229.

Attorney Nadine Y. Ando has been an attorney since 1982, practiced in the private sector for 40 years, was the Director of the Department of Commerce and Consumer Affairs, has extensive experience in civil litigation, and was lead counsel in this case.  ECF No. 385-25 at PageID.13176-13177.  Ms. Ando is an attorney with Fukunaga Matayoshi Ching & Kon-Herrera, LLP ("Fukunaga").  *Id*.

Attorney Dara S. Nakagawa has been an attorney since 2018, clerked for state court judges, has experience in civil litigation, is an attorney at Fukunaga, and in this case, performed legal research, drafted legal documents, managed motions practice and was involved in discovery.  *Id*. at 13177-13178..

Based on the evidence provided by the Defendants, the arguments provided by the parties and the Court's knowledge of the rates awarded in this district, the Court finds that the hourly rates requested for the Defendant's attorneys to be reasonable.  *See Roberts*, 938 F.3d at 1023-1024; *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (the Ninth Circuit held that district court did not abuse its discretion by relying on its own knowledge and experience to determine the reasonable hourly rate for attorneys' fees; *Sam K.*, 788 F.3d at 1041 ("[d]istrict courts may also use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'")).  The hourly rates the Court recommends should be awarded to the Defendant's attorneys are summarized below:

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| Attorneys | | | |
| Chen, Daniel M. | $300.00 | 22.2 | $6,660.00 |
| DiCristofaro, Deborah A. | $200.00 | 18.7 | $3,740.00 |
| Ezer, Matthew D. | $200.00 | 555.3 | $111,060.00 |
| Futa, Janice T. | $300.00 | 1,052.30 | $315,690.00 |
| Harada, Bryan M. | $200.00 | 265.4 | $53,080.00 |
| Jenkins, Forest B. | $200.00 | 509.6 | $101,920.00 |
| Khuy, Kenory E. | $200.00 | 833.7 | $166,740.00 |
| Kido, Nicholas K. | $200.00 | 52.1 | $10,420.00 |
| Kim, Antony J. | $200.00 | 192.1 | $38,420.00 |
| Saffery, Edmund K. | $350.00 | 521.4 | $182,490.00 |
| Simbahon, Alyssa M. | $200.00 | 486.3 | $97,260.00 |
| Tani, Jason M. | $350.00 | 1,122.10 | $392,735.00 |
| Ando, Nadine Y. | $300.00 | 411.70 | $123,510.00 |
| Nakagawa, Dara S. | $200.00 | 147.90 | $29,580.00 |
| Total: | | 6,190.80 | $1,633,305.00 |

Paralegal Erin O. Lee has been a paralegal since 1983 and has extensive paralegal experience in Hawaii (40 years), and her rate is supported by evidence provided in the Matayoshi Declaration. ECF No. 385-25 at PageID.13178. The Court finds that based on the evidence provided and the Court's knowledge, the hourly rate requested for Ms. Lee is reasonable.

On the other hand, the Defendant merely states that paralegals Susan Charboneau, Jennifer Correa, Elsonne Miyashiro, and Heather Yoshida's hourly rates are "well within the range of reasonableness for paralegals with similar experience in this community[,]" but does not explain, even briefly, the qualifications and experience of each paralegal. ECF No. 385-2 PageID.11234-11235. The Court finds that without more information or evidence, it cannot

determine with certainty whether the hourly rate requested for these paralegals are reasonable. Accordingly, the Court finds it appropriate to reduce the hourly rates requested for these paralegals to $100.00, which is above the base rate for an inexperienced paralegal, but is below the rate awarded to paralegals who have extensive experience. The Court finds that this middle ground will provide a balance between those paralegals who may have extensive experience and those whose experience may not be as extensive.

The Defendant does not provide any information regarding paralegal Nelly Paekukui,[2] and the hourly rate for this paralegal is not supported by any declaration or affidavit. Accordingly, the Court reduces the hourly rate of Ms. Paekukui to $80.00, which is the amount the Court finds, based on its own knowledge, is reasonable for a paralegal with minimal experience. The hourly rates the Court recommends should be awarded to the Defendant's paralegals are summarized below:

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| Paralegals | | | |
| Charboneau, M. Susan | $100.00 | 183.7 | $18,370.00 |
| Correa, Jennifer G. | $100.00 | 202.3 | $20,230.00 |
| Miyashiro, Elsonne N.M. | $100.00 | 104.3 | $10,430.00 |
| Paekukui, Nelly | $80.00 | 156.9 | $12,552.00 |
| Yoshida, Heather K. | $100.00 | 0.8 | $80.00 |

---

[2] The *Futa Affidavit* omits any reference to the hourly rate requested for paralegal Nelly Paekukui. *See* ECF No. 385-2. The *King Declaration* only supports the hourly rates requested for the Defendant's attorneys and is silent with regard to the Defendant's paralegals. ECF No. 390-1 at PageID.13435.

| Lee, Erin O. | $125.00 | 67.2 | $8,400.00 |
|---|---|---|---|
| Total: | | 715.2 | $70,062.00 |

Accordingly, using the approved reasonable hourly rates, the total amount of attorney and paralegal fees are **$1,703,367.00** ($1,633,305.00 + $70,062.00 = $1,703,367.00) for **6,981.8** hours of work.

## 2. __Hours Reasonably Expended__

The Court turns to whether the hours of work performed were reasonably necessary to achieve the results obtained. *Barranco v. 3D Sys. Corp.*, Civ. No. 13-00412 LEK-RLP, 2014 WL 12650678, at *1 (D. Haw. Sept. 3, 2014) (citing *Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted). For the same reasons discussed above, the Court finds that federal case law is instructive to determining the reasonable hours expended in this case. *See Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1043 (D. Haw. 2011).

A prevailing party seeking attorneys' fees bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked. *Hensley*, 461 U.S. at 437; *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The Plaintiff urges this Court to deny hours requested because some of the work performed are excessive (ECF No. 390 at PageID.13418), duplicative (*Id.*), block-billed (*Id.* at 13423), should be reduced for the lack of description (*Id.*) or are clerical (*Id.*). In support, Plaintiff provides

several exhibits containing spreadsheets showing individual entries that fall within these different categories of objections. The Court has carefully reviewed the Plaintiff's objections, but declines to conduct a line-by-line examination of the entire, voluminous 372-page billing records submitted as Exhibit U to the *Fee Motion*. ECF No. 385-22.

"[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citations omitted). This approach "has been criticized when employed in cases where the fee applications at issue involved substantial amounts of money and where district courts failed adequately to articulate their reasons for selecting specific percentage deductions." *Id*. (citations omitted). When taking the across-the-board percentage approach, the district court must "set forth a 'concise but clear' explanation of its reasons for choosing a given percentage reduction[.]" *Id*. at 1400.

Although Plaintiff has submitted summaries of billing entries in support of its argument that the amount of hours should be reduced, the Court elects to engage in across-the-board percentage reductions to the lodestar figure as opposed to a line-by-line analysis in order to account for work that was not reasonably

necessary in this case.  The Court shall address each recommended reduction in turn.

     **a.**  <u>**Excessive Billing**</u>

The Plaintiff claims that the Defendant is seeking hours that are excessive and provides a chart that lists 11 different tasks, the timekeepers that worked on each task and the number of hours each timekeeper worked on each task.  ECF No. 390 at PageID.13418.  "The district court may reduce the amount of requested fees . . . to deduct those hours the court deems excessive . . . " *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  "However, the district court must provide an adequate explanation for its fee calculation."  *Id.* (citing *Hensley*, 461 U.S. at 437).  The Plaintiff urges this Court to reduce the attorneys' fees requested by the specific entries in its chart.  However, the Court has reviewed each exhibit and finds that an across-the-board reduction is appropriate.  The Court shall address the categories that are shown in Plaintiff's chart.

**Exhibit 31** (ECF No. 390-34) to the *Opposition* is a summary compiled by the Plaintiff of entries related to work performed on *Defendant['s] response to [Plaintiff's] Concise Statement of Facts in Support of Motion for Partial Summary Judgment re Coverage for Lighting* (ECF No. 156) (consisting of 6 pages, excluding the caption and signature lines); *Defendant['s] Reply Memorandum in*

*Support of Defendant['s] Motion for Partial Summary Judgment [Dkt. No. 134]*
(ECF No. 170) (approximately 15 pages, excluding the caption, table of contents,
table of authorities and signature lines); and *Defendant['s] Memorandum in*
*Opposition to Plaintiff['s] Motion for Partial Summary Judgment re Coverage for*
*Lightning* (ECF No. 155) (approximately 23 pages, excluding the caption, table of
contents, table of authorities and signature lines).  Defense counsel expended 135.7
hours in the preparation and drafting of approximately 44 pages of work (exclusive
of any exhibits and declarations).

   **Exhibit 32** (ECF No. 390-35) to the *Opposition* is another summary
showing Defendant's billing entries regarding work related to drafting
*Defendant['s] Motion for Partial Summary Judgment* (ECF No. 134)
(approximately 27 pages, excluding the caption, table of contents, table of
authorities and signature lines) and *Defendant['s] Proposed Concise Statement of*
*Facts in Support of Its Motion for Partial Summary Judgment* (ECF No. 135)
(approximately 5 pages, excluding the caption and signature lines).  Defense
counsel expended 310.1 hours of work on approximately 32 pages, exclusive of
any exhibits and declarations.

   **Exhibit 33** (ECF No. 390-36) to the *Opposition* is a summary of the hours
defense counsel expended on a letter brief (ECF No. 142) (approximately 5 pages,
single-spaced) in response to Plaintiff's letter brief (ECF No. 141) (approximately

5 pages, single-spaced) seeking to take oral depositions in excess of the 10
depositions permitted in Fed. R. Civ. P. 30.  ECF No. 151. The spreadsheet
indicates that defense counsel expended a total of 39.8 hours to address the
deposition limit issue.

Exhibit 34 (ECF No. 390-37) to the *Opposition* summarizes the work
performed to draft *Defendant['s] Reply Memorandum in Support of Defendant['s]
Motion for Partial Summary Judgment [DKT. No. 134]* (ECF No. 170)
(approximately 15 pages, excluding the caption, table of contents, table of
authorities and signature lines).  The summary indicates that the Defendant
expended approximately 178.7 hours of work on the 15-page reply.

Exhibit 35 (ECF No. 390-38) to the *Opposition* is a summary of hours
expended by defense counsel in miscellaneous trial preparation such as, but not
limited to, reviewing outlines and creating outlines for trial, preparing information
for witnesses, reviewing and analyzing exhibits, analyzing issues arising at trial.
The summary indicates that defense counsel performed 867.5 hours of work in
preparation of trial.  However, this amount of time excludes time defense counsel
spent on attending trial.  Exhibit 36 (ECF No. 390-39) to the *Opposition* shows
that counsel defense counsel expended 226.4 hours attending trial.

Exhibit 37 (ECF No. 390-45) to the *Opposition* shows that defense counsel
expended 69.2 hours on settlement in this case.  Exhibit 38 (ECF No. 390-40) to

the *Opposition* is a summary of the 253.5 hours defense counsel spent on preparing and taking Plaintiff's deposition. **Exhibit 39** (ECF No. 390-41) to the *Opposition* is a summary of the hours defense counsel expended in connection with the motions in limine for trial. **Exhibit 40** (ECF No. 390-42) to the *Opposition* summarizes the 480.2 hours defense counsel spent preparing trial exhibits.

**Exhibit 41** (ECF No. 390-43) to the *Opposition* summarizes the hours defense counsel expended on designating depositions for presentation at trial. Defense counsel worked 137.6 on the designation of depositions.

    **Exhibit 42** (ECF No. 390-44)[3] is to the *Opposition* is a summary of the 13.6 hours defense counsel spent in connection and preparing Defendant's first and second request for admissions. The Court does not find that the hours in Exhibit 42 are excessive. However, the Court finds that a portion of the timekeeping in Exhibits 31 through 41 are excessive. The total billing entries in Exhibits 31-41 are summarized below.[4]

| Exhibit No. | Summary of Task | No. of Time-keepers | Hours |
|---|---|---|---|
| 31 | Response to Plaintiff's Concise Statement of Facts, Defendant's Reply in Support of its Motion for Partial Summary Judgment, and Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment | 7 | 135.7 |

---

[3] Plaintiff omitted Exhibit 42 from its summary of excessive time entries. ECF No. 390 at PageID.13418.
[4] Plaintiff also summarized these exhibits, but there are errors in Plaintiff's summary. *See* ECF No. 390 at PageID.13418.

| | | | |
|---|---|---|---|
| 32 | Defendant's Motion for Partial Summary Judgment and Defendant's Concise Statement of Facts | 10 | 310.1 |
| 33 | Deposition Limit Issue | 6 | 39.8 |
| 34 | Defendant's Reply in Support of Defendant's Motion for Partial Summary Judgment | 8 | 178.7 |
| 35 | Miscellaneous Trial Preparation | 13 | 867.5 |
| 36 | Trial Attendance | 6 | 226.4 |
| 37 | Settlement | 7 | 69.2 |
| 38 | Plaintiff's Deposition | 13 | 253.5 |
| 39 | Motions in Limine | 12 | 682.1 |
| 40 | Exhibits | 12 | 480.2 |
| 41 | Deposition Designations | 10 | 137.6 |
| | | **Total Hours:** | **3,380.8** |

Based on the Court's review of Exhibits 31 through 41, and taking into consideration the number of timekeepers performing work on each task category and the length of time each timekeeper spent on these tasks, the Court finds that conservatively, approximately 20% of the total hours expended (3,380.8) are excessive and should be reduced.

For example, Exhibit 31 shows that 7 timekeepers expended 135.7 hours in preparation of drafting approximately 44 pages of work, excluding any exhibits or declarations. These hours include duplicated efforts such as the analysis of the same arguments or issues by multiple timekeepers. A 20% reduction of time from 135.7 hours to 108.6 hours would make the hours billed reasonable. Further, the time spent on some of the individual tasks was excessive. For example, on February 22, 2023, counsel expended 3.4 hours on "[o]nline research re: Accuracy

of Google Maps time stamp data." ECF No. 390-34 at PageID.14201. This

amount should be reduced by at least 20% to be reasonable.

The Court finds that the total hours requested in Exhibits 31 through 41

should be reduced by 20% from 3,380.8 hours to 2,704.64 hours of work, resulting

in a 676.2 hour reduction (3,380.8 – 2,704.6 = 676.2). The total amount of hours,

after this Court determined the reasonable hourly rates, for all work defense

counsel performed in this case is **6,981.8** hours. The 676.2 hour reduction from

6,981.8 hours is approximately a 10% reduction (676.2 ÷ 6,981.8 = 0.09685) of the

total hours of work performed by defense counsel in this case. Accordingly, the

Court finds it appropriate to reduce the total fees ($1,703,367.00) by an across-the-

board percentage of 10%. Accordingly, the amount of fees is reduced from

$1,703,367.00 to **$1,533,030.30** ($1,703,367.00 x 90%).

      **b.**   **Block-Billed Entries**

The Court finds that the timekeeping entries submitted by defense counsel

contain numerous block-billed entries. "District courts have the authority to

reduce hours that are billed in block format because such a billing style makes it

difficult for courts to ascertain how much time counsel expended on specific

tasks." *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100 (D. Haw. 2010) (citing

*Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)). The Court

carefully reviewed pages 1 through 2 of Exhibit U (ECF No. 385-22 at

PageID.12218-12219) and carefully reviewed randomly selected pages 183 through 184 of Exhibit U (*Id*. at 12400-12401). The Court finds that the on page 1, over 50% of the hours billed are block-billed; on page 2, over 10% of the hours billed are block-billed; on page 183, over 60% of the hours billed are block-billed; and on page 184, over 20% of the hours billed are block-billed. Based on the Court's review of the block-billed entries, the Court finds that an across-the-board conservative percentage of 20% is sufficient to account for any overlap, duplication of work and ambiguous time entries that make it difficult to determine whether the hours expended on specific tasks are reasonable. Accordingly, a 20% reduction of the lodestar amount of $1,533,030.30 is **$1,226,424.24** ($1,533,030.30 x 80%).

### c.    <u>Insufficient Descriptions</u>

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch*, 480 F.3d at 948 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). In this case, approximately 10% of the billing entries are marked "REDACTED," making it impossible for the Court to determine whether the work performed on those tasks are indeed reasonable. The Court thus elects to apply a 5% reduction to the lodestar amount to account for the inability of the Court to determine whether the hours expended on the billing entries marked

"REDACTED" are reasonable.  Accordingly, a 5% reduction of $1,226,424.24

reduces the lodestar amount to **$1,165,103.03** ($1,226,424.24 x 95%).

### d.    Clerical Entries

The Court finds that there are clerical tasks charged as attorneys' fees.

"[C]lerical or ministerial costs are part of an attorney's overhead and are reflected

in the charged hourly rate."  *Nicholas M. ex rel. Laura M. v. Dep't of Educ.,*

*Hawaii*, Civ. No. 09-00162 HG-LEK, 2010 WL 234862, at *5 (D. Haw. Jan. 21,

2010) (citation omitted).  Preparing documents for filing and filing documents with

the Court are clerical and non-compensable.  *OneWest Bank, FSB*, Civ. No. 12-

00108 ACK-KSC, 2014 WL 1326590, at *1 n. 2, *report and recommendation*

*adopted as modified*, Civ. No. 12-00108 ACK, 2014 WL 1326602 (D. Haw. Mar.

31, 2014) (citing *Haw. Motorsports Inv., Inc. v. Clayton Group Servs., Inc.*, Civ.

No. 09-00304 SOM-BMK, 2010 WL 4974867, at *5 (D. Haw. Dec. 1, 2010),

*adopted by Haw. Motorsports Inv. Inc. v. Clayton Group Servs.*, Civ. No. 09-

00304 SOM-BMK, 2010 WL 5395669 (D. Haw. Dec. 22, 2010)).

Work performed on a table of authorities are also considered ministerial and

are non-compensable.  *OneWest Bank, FSB*, 2014 WL 1326590, at *1 n. 2 (citing

*Yamada v. Weaver*, Civ. No. 10-00497 JMS-RLP, 2012 WL 6019121 (D. Haw.

Nov. 30, 2020)).  Further, "coordinating service of documents; and formatting or

printing documents; reviewing court-generated notices; notifying clients of court

hearings; communications with court staff; scheduling; and corresponding regarding deadlines" are all examples of clerical work. *Hawaii Def. Found. v. City & Cty. of Honolulu*, Civ. No. 12-00469 JMS-RLP, 2014 WL 2804445, at *8 (D. Haw. Apr. 22, 2014), *report and recommendation adopted as modified*, Civ. No. 12-00469 JMS, 2014 WL 2804448 (D. Haw. June 19, 2014) (citing *Ko Olina Dev., LLC v. Centex Homes,* Civ. No. 09–00272 DAE–LEK, 2011 WL 1235548, at *12 (D. Haw. Mar. 29, 2011)).

Plaintiff has provided the Court with a summary of billing entries (Exhibit 21, ECF No. 390-24) Plaintiff believes to be clerical and thus non-compensable. However, the Court disagrees with a number of entries Plaintiff claims to be clerical in Exhibit 21. For example, the Court cannot find that drafting a chronology of facts in preparation for litigation, reviewing depositions, and drafting summaries are purely clerical without more description. *See supra* Part II.C.2.c (an across-the-board reduction was made to account for insufficient descriptions).

However, other billing entries from Exhibit U contain various clerical work such as the entry on October 19, 2021 indicates that attorneys fees were sought for work on finalizing a stipulation and submitting the document to the Court for filing/court approval. ECF No. 385-22 at PageID.12219. On April 28, 2023, the Defendant billed for a paralegal to "reorganize LM's electronic trial exhibits[.]"

36

*Id*. at 12516.  However, the identification and organization of exhibits are considered clerical tasks.  *OneWest Bank, FSB v. Farrar*, Civ. No. 12-00108 ACK, 2014 WL 1326590, at \*1 (D. Haw. Mar. 10, 2014), *report and recommendation adopted as modified*, Civ. No. 12-00108 ACK, 2014 WL 1326602 (D. Haw. Mar. 31, 2014).  In order to account for the inclusion of clerical work in the Defendant's total hours requested, the Court finds that a 5% across-the-board reduction of the lodestar amount is proportional to the amount of clerical work billed.  The Court thus reduces the lodestar amount of $1,165,103.03 to $1,106,847.88 ($1,165,103.03 x 95%).

### e.    Final Lodestar Amount

After the across-the-board reductions, the total lodestar amount is $1,106,847.88.  The Court's reductions are summarized below:

| Description | Percentage Reduction | Lodestar Amount |
|---|---|---|
| Reasonable Hourly Rates | | $1,703,367.00 |
| Excessive & Duplicative | 10% | $1,533,030.30 |
| Block-Billed Entries | 20% | $1,226,424.24 |
| Insufficient Descriptions | 5% | $1,165,103.03 |
| Clerical Entries | 5% | $1,106,847.88 |

### f.    General Excise Tax

The Defendant requests GET in addition to its attorneys' fees.  ECF No. 385-1 at PageID.11210.  The GET in Hawaii is 4.712% and, in this case, amounts to  $52,154.67 ($1,106,847.88 x 0.04712).

### 3.   Twenty-Five Percent Limitation on Fees

Haw. Rev. Stat. § 607-14 limits the amount of attorneys' fees awarded to "twenty-five [25] per cent of the judgment" or "the amount sued for[.]"  Haw. Rev. Stat. § 607-14.  Haw. Rev. Stat. § 607-14 provides that "the amount of attorneys' fees taxed 'shall not exceed twenty-five percent of the judgment . . . The [fees] provided for by this section shall be assessed on . . . the amount sued for if the defendant obtains judgment." *Wong v. Takeuchi*, 88 Haw. 46, 50, 961 P.2d 611, 615 (1998) (citation omitted).  Because the Defendant prevailed in this case, the Court must thus reduce the final lodestar figure to an amount that is no larger than 25% percent of the amount sued for.  "[T]he Hawaii Supreme Court has determined that the amount requested by counsel at trial is sufficient to show the amount sued for under Section 607-14." *Du Preez v. Banis*, Civ. No. 14-00171 LEK-RLP, 2017 WL 6523162, at *8 (D. Haw. Oct. 18, 2017), *report and recommendation adopted*, Civ. No. 14-00171 LEK-RLP, 2017 WL 6519015 (D. Haw. Dec. 20, 2017).  The parties agree that the Plaintiff sought $1,233,433.00 in policy benefits during trial and the 25% cap should be calculated based off of this figure.  ECF No. 385-1 at PageID11213; ECF No. 390 at PageID.13415.[5]  This Court agrees.

---

[5] The Plaintiff indicated that the policy benefits were $1,233,433.00.  ECF No. 390 at PageID.13415.  This number is different from the Defendant's figure

The parties, however, disagree on whether the calculation of the 25% cap should also be based on adding the (1) $236,666.67 in loss of use damages calculated by Plaintiff's expert; (2) $1,133,000.00 for the loss of value of Plaintiff's home; and (3) attorney fees Plaintiff would have requested had Plaintiff prevailed to the calculation. ECF No. 385-1 at PageID.11214 - 11217. The Defendant argues that $236,666.67 in loss of use damages should be added to the $1,233,433 policy benefits in order to calculate the 25% cap. The Defendant argues that if the district court did not grant the Defendant's motion for partial summary judgment on the issue of the Plaintiff's loss of use damages, the Plaintiff would have claimed he suffered $236,666.67 in loss of use damages at trial. ECF No. 385-6. The Defendant obtained this figure from Plaintiff's expert report on damages, drafted by Robert Hugh Joslin ("Joslin Expert Report"). ECF No. 385-6 at pageID.11746. However, the Defendant does not state that Plaintiff sought $236,666.67 in loss of use damages during litigation and only states that the Plaintiff could have potentially sought such an amount. The record also does not reflect that Plaintiff, during closing at trial, sought $236,666.67 in loss of use damages. *See* ECF No. 385-5 at PageID.11687-11708. The Court thus cannot find that the Plaintiff had sued for $236,666.67 in this case.

---

($1,233,444.00) (ECF No. 385-1 at PageID.11213), but this difference could be a typographical error.

The Defendant also argues that $1,133,000.00 should be included in the calculation of the 25% cap because according to Defendant's calculations, this amount represents the value of the home lost when the home was sold.  ECF No. 385-1 at PageID.11215.  The Plaintiff disagrees and argues that the "Plaintiff never argued diminished value was a benefit under the Policy."  ECF No. 390 at PageID.13416.  The Plaintiff explains that such damages are an alternative measure of damages for bad faith.  *Id.*  Such an issue "would only have gone to the jury in lieu of, not in addition to, any benefits the jury found were due under the policy."  ECF No. 390 at PageID.13416. Indeed, at trial, Plaintiff's counsel did not state that  the diminished value of the property as a measure for damages for bad faith.  ECF No. 385-5 at PageID.11687-11708.  "[W]hen judgment is obtained by the defendant, the cap applies to the amount 'sued for,' not an amount that **could** be awarded to the plaintiff at trial."  *Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1041 (D. Haw. 2011) (citing *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawaiʻi 92, 123-24, 176 P.3d 91, 122-23 (2008)) (emphasis added).  The Court thus cannot find that the $1,133,000.00 should be included in the calculation of the 25% cap.

The Defendant also argues that any attorney fees and costs that Plaintiff would have sought under Haw. Rev. Stat. § 431:10-242 should be included in the calculation of the 25% cap.  However, the statute does not state that the attorneys'

fees that would have been sought by plaintiff should be included when considering "the amount sued for[.]" Haw. Rev. Stat. § 607-14 states in relevant part:

> The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

Notably, in the event judgment was entered in favor of a plaintiff, the statute specifically excludes any attorneys' fees "obtained by the plaintiff" from the calculation of the 25% cap. *Id.* Given this exclusion, the Court cannot find that if judgment was entered in favor of a defendant, the "amount sued for" was meant to include attorneys' fees that would have been sought by Plaintiff.

The Court finds that the 25% cap should be calculated using the amount Plaintiff sought in policy benefits during trial. Twenty-five percent of $1,233,433.00 is equivalent to $308,358.25, which is the maximum attorneys' fee award that the Defendant may receive under Haw. Rev. Stat. § 607-14. The 25% cap is lower than the lodestar amount, $1,106,847.88, and thus, the Court recommends that the total attorneys' fees awarded pursuant to Haw. Rev. Stat. § 607-14 should be $308,358.25. Because the final lodestar amount exceeds the statutory limit, the Court cannot recommend that any GET should be awarded in addition to the statutory maximum of $308,358.25.

**4.** **Proposed Reduction of Attorneys' Fees Due to the Defendant's Misconduct**

Plaintiff argues that if the Court determines that the Defendant is entitled to attorneys' fees under Haw. Rev. Stat. § 607-17, the Court should nevertheless decline to award any fees due to the Defendant's bad faith conduct during litigation. ECF No. 390 at PageID.13426. The Plaintiff claims that during the deposition of the Defendant, counsel objected 999 times while conducting 6 depositions and almost none of these objections were appropriate. *Id.* at 13426-13427. The Plaintiff also claims that during Jeff Cromer's deposition, defense counsel repeatedly kicked Mr. Cromer's foot in an attempt to influence Mr. Cromer's testimony. *Id*. at 13427.

The Plaintiff states that Nahal Mazandarani, general adjuster for the Defendant, made false statements about what third parties had told her. *Id*. The Plaintiff alleges that Ms. Mazandarani falsely stated that Andrew Makely, an electrician hired to inspect the Plaintiff's property, claimed that Mr. Makely told her that the Plaintiff had guided Mr. Makely to conclude that lighting struck the property. *Id*.; ECF No. 245 at PageID.4340 & 4343. The Plaintiff also alleges that the Defendant coerced Darryl Reddell into signing a misleading declaration and was subsequently harassed by the Defendant during a multi-hour deposition. ECF No. 245 at PageID.4344; ECF No. 390 at PageID.13428. The Plaintiff further claims that the Defendant failed to extend professional courtesy when the Plaintiff failed to timely submit expert rebuttal reports. ECF No. 390 at PageID.13428-

13429.  Lastly, the Plaintiff claims that the Defendant's Second Request for

Admissions, consisting of 97 requests, were served for an improper purpose.  *Id*. at

13429-13430; ECF No. 390-12.

Litigation in this case was protracted and highly adversarial.  The Defendant

claims it had a good-faith basis for the efforts it made to litigate this case and

denies all allegations that it acted in bad faith.  ECF No. 391 at PageID.14313.

While the Court agrees that the Plaintiff's allegations regarding the conflicting

statements between Ms. Mazandarani and Mr. Makely, the alleged circumstances

of Mr. Reddell's declaration, and the timing of Defendant's Second Request for

Admissions seem questionable, the Court cannot ascertain with any degree of

confidence that these facts necessarily prove Plaintiff's allegation that the

Defendant acted in bad faith.

Without more, conflicting statements, an accidental nervous twitch that

could be misperceived as wrongdoing simply because a deponent was mistakenly

being kicked, refusals to agree to an extension of a deadline especially after the

deadline has passed, and timely discovery that comes at a bad time for a party does

not definitively translate into bad faith.  Although the Plaintiff provided its

attorney's declaration in support of its allegations, noticeably missing are

declarations from the individuals that the Plaintiff claims were the target of the

Defendant's alleged wrongful conduct.  A single-sided biased view could

43

potentially be a misperception of overzealous behavior. Based on the information and evidence provided, the Court does not find that the Plaintiff has established that the Defendants acted in bad faith throughout this litigation such that this Court should deny the requested attorneys' fees and costs.

## III.  **Non-Taxable Costs**

The Defendant requests a total of $304,596.74 in non-taxable costs pursuant to Haw. Rev. Stat. § 607-14 for expert fees ($283,389.03) and travel costs ($21,207.71). ECF No. 385-1 at PageID.11211-11213. Haw. Rev. Stat. § 607-14 does not expressly authorize an award of non-taxable costs in addition to attorneys' fees. "However, Hawaii courts have awarded non-taxable costs pursuant to Haw. Rev. Stat. § 607-14." *See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, Civ. No. 09-00181 LEK-KSC, 2015 WL 881577, at *20 (D. Haw. Feb. 27, 2015); *Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC*, 871 F. Supp. 2d 1040, 1057 (D. Haw. 2012).

The Defendant requests the following in non-taxable costs:

| Description | Date | Amount |
|---|---|---|
| Testifying expert witness Dr. Mark A. Yocke, PhD | 12/21/22 | $5,280.00 |
| | 1/12/23 | $36,703.50 |
| | 2/10/23 | $24,146.00 |
| | 3/29/23 | $19,425.50 |
| | 4/28/23 | $8,944.00 |
| | 5/18/23 | $8,944.00 |
| | 6/21/23 | $32,838.00 |
| | **Total:** | $136,281.00 |

| Description | Date | Amount |
|---|---|---|
| Testifying expert witness Chris Ponsar, MAI, SRA | 1/20/23 | $12,500.00 |
| | 6/27/23 | $6,243.45 |
| | **Total:** | $18,743.45 |

| Description | Date | Amount |
|---|---|---|
| Testifying expert witness R. Wade Vandiver, Esq. | 1/31/23 | $30,280.00 |
| | 6/25/23 | $8,935.00 |
| | **Total:** | $39,215.00 |

| Description | Date | Amount |
|---|---|---|
| Testifying expert witness Bert Saito, PE | 2/23/23 | $21,241.54 |
| | 2/23/23 | $3,600.00 |
| | 6/15/23 | $20,617.17 |
| | 6/26/23 | $75.52 |
| | **Total:** | $45,534.23 |

| Description | Date | Amount |
|---|---|---|
| Testifying expert witness Todd Pealock, PE | 6/19/23 | $44,615.35 |
| | **Total:** | $44,615.35 |

*See* ECF No. 385-1 at PageID.11211-11213.  "Expert fees have been awarded in this district pursuant to [Haw. Rev. Stat.] § 607-14" as non-taxable costs.

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, Civ. No. 09-00181 LEK-KS, 2015 WL 881577, at *21 (D. Haw. Feb. 27, 2015) (citing *Deguchi v. Allstate Ins. Co.,* Civil No. 07–00144 JMS–LEK, 2008 WL 4344741, at *9 (D. Haw. Feb. 23, 2008)).  Similarly, travel expenses have also been awarded in this district pursuant to Haw. Rev. Stat. § 607-14 as non-taxable costs.  *BlueEarth Biofuels*, 2015 WL 881577, at *21.  "Necessary and reasonable travel expenses may be recovered as a non-taxable cost."  *Adon Constr. Inc. v. Renesola Am. Inc.*, Civ. No. 16-00568 JAO-WRP, 2019 WL 5198176, at *13 (D. Haw. Sept. 26, 2019), *report and*

45

*recommendation adopted*, Civ. No. 16-00568 JAO-WRP, 2019 WL 5196376 (D. Haw. Oct. 15, 2019) (citing *Ko Olina Dev., LLC v. Centex Homes*, Civ. No. 09-00272 DAE-LEK, 2011 WL 1235548, at \*15 (D. Haw. Mar. 29, 2011)).

Nevertheless, "[t]he total award of attorneys' fees and costs cannot exceed the twenty five percent limit in § 607-14." *JJCO, Inc. v. Isuzu Motors Am., Inc.*, Civ. No. 08-00419 SOM-LEK, 2010 WL 3001924, at \*14 (D. Haw. July 30, 2010), *report and recommendation adopted as modified*, Civ. No. 08-00419 SOM-LEK, 2010 WL 4272980 (D. Haw. Oct. 21, 2010) (citing *DFS Grp. L.P. v. Paiea Properties*, 110 Haw. 217, 220, 131 P.3d 500, 503 (2006) ("HRS § 607-14 also provides that an award of costs and fees "shall not exceed twenty-five per cent of the judgment."); s*ee also BlueEarth Biofuels*, 2015 WL 881577, at \*22 (awarding non-taxable costs in light of the total amount of attorneys' fees and costs being less than the statutory 25% cap); *Sunday's Child, LLC v. Irongate Azrep BW LLC*, Civ. No. 13-00502 DKW-RLP, 2014 WL 2451556, at \*5 (D. Haw. Apr. 11, 2014), *report and recommendation adopted as modified*, Civ. No. 13-00502 DKW-RLP, 2014 WL 2451560 (D. Haw. May 30, 2014) (awarding non-taxable costs when the amount of attorneys' fees and costs are well within the 25% cap).  Accordingly, the Court finds that the Defendant's request for non-taxable costs in addition to attorneys' fees exceed the statutory limit and must therefore be denied.

## **CONCLUSION**

Based on the foregoing, the Court **FINDS** that the Defendant is the prevailing party in this case and **RECOMMENDS** that the **Fee Motion** be **GRANTED** as to the statutory maximum under Haw. Rev. Stat. § 607-14, in the amount of $308,358.25.  The Court **RECOMMENDS** that the *Fee Motion* be DENIED as to the request for GET in the amount of $52,154.67, and non-taxable costs in the amount of $304,596.74.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, February 6, 2024.

Rom A. Trader
United States Magistrate Judge

---

Civ. No. 21-00390 DKW-RT;  *Shawn D. Privratsky vs. Liberty Mutual Fire Insurance Company*; Findings and Recommendation to Grant in Part and Deny in Part Defendant Liberty Mutual Fire Insurance Company's Motion for Attorneys Fees