IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| SHAWN D. PRIVRATSKY,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL FIRE<br>INSURANCE COMPANY,<br><br>Defendant. | Case No. 21-cv-00390-DKW-RT<br><br>**ORDER (1) GRANTING DEFENDANT'S REQUEST TO PROCEED, (2) OVERRULING IN PART AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS TO AMENDED FINDINGS & RECOMMENDATION (F&R) OF U.S. MAGISTRATE JUDGE, (3) SUSTAINING DEFENDANT'S OBJECTION TO THE F&R, (4) ADOPTING IN PART AND OVERRULING IN PART THE F&R, AND (5) GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES TO THE EXTENT SET FORTH HEREIN** |

The Court paused the proceedings in this long-running case that was tried to a jury verdict in June 2023. The Court did so—with Defendant Liberty Mutual Fire Insurance Company's attorneys' fees motion pending—to allow time for the parties to mediate their many disputes before the Mediation Office of the Court of Appeals for the Ninth Circuit.

In early 2026, the hiatus appeared to have been warranted, with Liberty reporting a "settlement in principle" arising out of the Circuit's mediation efforts. The report though seems to have been premature.   Privratsky denies any deal had been reached, resulting in the parties being "released" from the Ninth Circuit's mediation program, and the appellate court directing merits briefing.   Because the basis for this Court's pause—mediation—no longer exists, the Court VACATES its abeyance order and proceeds with consideration of Liberty's fees motion.

The parties dispute many things small and not-so-small concerning Liberty's fees motion.   Resolving *three* of these disputes, however, principally resolves the parties' disagreements, as explained more fully below.   First, pursuant to Hawai'i Revised Statutes (HRS) Section 607-14, this *action* was and is in the nature of assumpsit and, thus, Liberty is entitled to an award of attorneys' fees as the jury's prevailing party.   Second, pursuant to Section 607-14, Liberty is entitled to up to 25 percent of the "amount sued for", an amount which here equals $1,470,099.67, resulting in a maximum possible fee award of $367,524.91.   Third, the record evidence found persuasive by this Court reflects that Liberty incurred more than $400,000 in litigating Count 1—a claim the Court has already found is in the nature of assumpsit—which is an amount *in excess* of the maximum possible fee award.   When combined, these three findings mean that Liberty is entitled to a fee

2

award of $367,524.91. Liberty's motion for attorney's fees, Dkt. No. 385,

therefore, is GRANTED to that extent.

### RELEVANT PROCEDURAL BACKGROUND[1]

On April 25, 2024, the Court, *inter alia*, remanded Liberty's motion for

attorney's fees (fees motion) to the assigned Magistrate Judge for further

consideration of certain issues (April 2024 Order). Dkt. No. 412. Specifically,

the Court remanded the following two issues: (1) whether this case was in the

nature of assumpsit, and (2) if so, whether Counts 1 and 2 of the Complaint were

inextricably intertwined. *Id*. at 8-10. The Court also declined to address various

objections raised by both parties in the event they were altered by the remanded-

issues mentioned above, but observed that they could be re-asserted, if appropriate.

*Id*. at 7 n.5, 10.

On February 14, 2025, the Magistrate Judge entered an Amended Findings

and Recommendation on the fees motion (F&R). Dkt. No. 414. In particular, the

Magistrate Judge recommended granting and denying in part the fees motion to the

extent of awarding Liberty a total of $308,358.25 in attorney's fees. *Id*. at 2, 22.

The Magistrate Judge made the following relevant findings in that regard. First,

---

[1] Further relevant background can be found in the April 25, 2024 Order summarized below. Dkt. No. 412 at 2-5.

the Magistrate Judge found that Count 1 of the Complaint was in the nature of assumpsit. *Id*. at 9-12. Second, the Magistrate Judge found that certain fees could be apportioned between assumpsit and non-assumpsit claims, with such fees for non-assumpsit claims being deducted from the amount to which Liberty was entitled. *Id*. at 13-18. This resulted in a total fees amount for Count 1, the assumpsit claim, of $1,488,840.00. *Id*. at 18. Third, the Magistrate Judge found, after determining reasonable hourly rates for the numerous attorneys and paralegals engaged by Liberty, that the total fees incurred were $1,470,450.00. *Id*. at 18-20. Fourth, after making deductions for reasons such as duplicative billing entries and block-billing, the Magistrate Judge reduced the total fees, or "lodestar", amount to $955,498.41. *Id*. at 20-21. Fifth, the Magistrate Judge explained that, pursuant to HRS Section 607-14, Liberty was entitled to fees not exceeding 25 percent "of the amount sued for." *Id*. at 7. In that regard, the Magistrate Judge found that Privratsky sought "$1,233,433.00 in policy benefits during trial[]", with 25 percent of this amount being $308,358.25. *Id*. at 22. As a result, because the "statutory cap"—$308,358.25—was exceeded by the "lodestar" amount— $955,498.41—the Magistrate Judge found that Liberty was entitled to the lower, former amount, and recommended granting the fees motion to that extent. *Id*.

4

Both Privratsky and Liberty filed objections to the F&R.   Dkt. Nos. 416, 417.   Privratsky objected on the following grounds.   First, Privratsky argued this action was not in the nature of assumpsit.   Dkt. No. 416 at 2-11.   Second, Privratsky argued that the Magistrate Judge erred in apportioning fees between assumpsit and non-assumpsit claims.   *Id*. at 11-13.   In particular, Privratsky argued that, "at most," $231,185.00 was "even arguably related" to Count 1.   *Id*. at 12.   Third, Privratsky argued that Liberty's fees should have been reduced by 35 percent for "excessive and duplicative billing", as opposed to the 10 percent reduction used in the F&R.   *Id*. at 13-16.   Fourth, even though the Magistrate Judge recommended denying the fees motion to the extent "non-taxable costs" were sought, Privratsky objected to the extent that the Magistrate Judge made this recommendation solely due to the statutory cap.   *Id*. at 16.   Finally, Privratsky objected to the Magistrate Judge not excluding time and fees incurred on "self-imposed" or "avoid[able]" matters.   *Id*. at 17-18.

Liberty objected to the F&R on one ground.   Dkt. No. 417.   Specifically, Liberty argued that, in calculating the "amount sued for" under Section 607-14, the Magistrate Judge erred in failing to include $233,666.67 in "loss of use damages" allegedly sought in connection with Count 1.   Dkt. No. 417-1 at 1.   Liberty asserted that, with the inclusion of the above-mentioned amount, the "amount sued

5

for" should have been $1,470,099.67, with the "statutory cap", therefore, being increased to $367,524.91, *i.e.*, 25 percent of $1,470,099.67.   *Id.* at 6.

On March 14, 2025, both parties responded to their opponent's objections. Dkt. Nos. 418, 419.   On March 25, 2025, the Court held in abeyance the fees motion, including related objections, after referring this action to the Mediation Office of the Court of Appeals for the Ninth Circuit (Mediation Program).   Dkt. Nos. 420, 421.[2]   The parties were also instructed to provide periodic updates to the Court regarding the above-described mediation.   Dkt. No. 421.

On August 20, 2025, the parties filed a joint status report, stating that the parties had "reached a settlement in principle, which will resolve the pending Ninth Circuit appeals and the [fees motion]."   Dkt. No. 424 at 2.   The parties also stated that they were working "on a formal settlement agreement[]" and asked for the fees motion to remain "in abeyance for now."   *Id.* at 2-3.   On March 25, 2026, the parties filed another joint status report, stating, essentially, that they now could not agree whether they had "ever reached[]" a "binding settlement".   Dkt. No. 438. On the same day, the parties were "RELEASED from the Mediation Program." Case No. 23-15998, *Privratsky v. Liberty*, Dkt. No. 49.

---

[2]Relatedly, at that time, two separate appeals involving Privratsky, Liberty, and the subject matter of this case, were pending before the Ninth Circuit: (1) Case No. 23-15998, *Privratsky v. Liberty*, and (2) Case No. 24-00407, *Privratsky v. Liberty*.

On May 21, 2026, apparently as a result of this release, Liberty submitted a letter, stating that "mediation has now concluded[]", and requesting the Court to address its fees motion.   Dkt. No. 440.   On May 26, 2026, Privratsky objected to Liberty's request.   Dkt. No. 441.    He instead requested that the fees motion continue to be held in abeyance until disposition of the two appeals pending before the Ninth Circuit to promote "judicial economy".   *Id.*

This Order now follows.

## **STANDARDS OF REVIEW**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."   *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).   "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).   *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255).

Pursuant to Section 636(b)(1)(A) of Title 28 of the United States Code, with certain exceptions not applicable here, a district court may reconsider the decision

of a Magistrate Judge on a *pretrial* matter only when the decision is clearly erroneous or contrary to law.   Otherwise, pursuant to 28 U.S.C. Section 636(b)(1)(B), a district court may refer a matter to a Magistrate Judge for findings and recommendations.   The court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(B).[3]

## **DISCUSSION**

The Court begins with whether to lift the stay on Liberty's fees motion.   In light of the undisputed fact that the parties are no longer mediating, in the Mediation Program or otherwise, there is no basis to continue the stay.   As recounted, the only reason the fees motion was held in abeyance in the first place was for the parties to mediate their disputes.   Dkt. No. 421.   Because the *only* reason the Court found sufficient for a stay—mediation—is now over, it is time to move on, and the abeyance of the fees motion is VACATED.[4]

---

[3]Because the Court's findings herein do not turn on the standard of review to apply, it is unnecessary to decide whether the motion for attorneys' fees, which was filed *post*-trial, is nonetheless a *pre*-trial matter to which the clearly erroneous standard of review applies.

[4]Privratsky's assertion—that waiting for the result of the parties' appeals is reason to continue the stay—is particularly inapt here, given that the sole remaining matter in this case is a fees motion, which, naturally, must always come while a merits appeal, if any, is pending.   *See* Local Rule 54.2(b) (providing that a fees motion shall be filed within 49 days *after* the entry of judgment).   In other words, if Privratsky's stance was accepted, no fees motion would ever be decided pending the result of a merits appeal.   Because this is not the practice in federal court, the Court declines to adopt it here.

The Court now turns to the fees motion.   While the parties raise many objections with the F&R, the Court finds that resolution of three of these disputes principally guides the outcome of the fees motion.

First, pursuant to Section 607-14, the Court must decide whether this action is in the nature of assumpsit, *i.e.*, the non-performance of a contract.   *See Blair v. Ing*, 31 P.3d 184, 189 (Haw. 2001).   Having presided over this action from its outset, the Court has no doubt that the case's principal concern was the non-payment of insurance benefits arising from a homeowner's insurance policy or contract between Liberty and Privratsky.   Liberty declined to make such payment because of a dispute over whether lightning struck and caused damage to Privratsky's former home, triggering coverage.   Accordingly, this action, including the in-limine practice and trial testimony, focused predominately upon what caused damage, if any, to Privratsky's home.   This is true too of the Complaint, which sought benefits and attorneys' fees under the policy.   Dkt. No. 1 at ¶¶ 39, 41;[5] *see Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir. 1997) ("a plaintiff's prayer for attorney fees is a significant indication that the action is in

---

[5]This case is, thus, different from those, such as *Chock v. Gov't Emps. Ins. Co.*, 81 P.3d 1178, 1183 (Haw. 2003), where the only relief sought was "a declaration as to the applicability of insurance coverage", "not money damages."   Here, Privratsky clearly sought money damages, whether implicitly or explicitly throughout this litigation.   *See, e.g.*, Dkt. No. 1 at ¶ 41; Dkt. No. 406 at 2-3.

assumpsit."). Privratsky's suggestion—that counting the number of paragraphs dedicated to any one issue—is a way to determine the nature of this action, *see* Dkt. No. 416 at 9-10, is simply an unserious, and easily manipulated, measuring stick. Finally, if there was any doubt with respect to the nature of this action, "[w]here there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit." *Blair*, 31 P.3d at 189. As a result, the Court finds that this action was and is in the nature of assumpsit, and, therefore, pursuant to Section 607-14, Liberty is entitled to "a fee that the court determines to be reasonable…provided that this amount shall not exceed twenty-five per cent of the…amount sued for…." Privratsky's objection and argument to the contrary, Dkt. No. 416 at 2-11, is OVERRULED.

Second, the Court must decide the "amount sued for" in light of Liberty's objection to the F&R. Specifically, as mentioned, Liberty contends that the Magistrate Judge should have included $233,666.67 in "loss of use damages" in calculating the amount sued for.[6] Dkt. No. 417 at 1. In response, Privratsky claims that, because he did not present evidence at trial on "loss of use damages",

---

[6]Privratsky did not object to the Magistrate Judge's finding that the "amount sued for" was $1,233,433.00. *See generally* Dkt. No. 416; *see also* Dkt. No. 418 at 2 (acknowledging that Privratsky "asked the jury to determine $1,233,433 in benefits were due under the policy."). The Court, therefore, uses $1,233,433.00 as the baseline for the "amount sued for".

the same were properly excluded.   Dkt. No. 418 at 2-3.   Upon review, the Court

agrees with Liberty and SUSTAINS the objection, Dkt. No. 417.   Specifically, as

Privratsky should be more than aware, there is a very good reason why he did not

seek loss of use damages at trial.   After Privratsky claimed $236,666.67 as "loss

of use damages" in one of his experts' reports, Dkt. No. 135-32 at 5; Dkt. No. 135

at ¶ 41 (Liberty's concise statement of facts stating that Privratsky claimed

$236,666.67 in "loss of use damages"); Dkt. No. 154 at 2 (not disputing paragraph

41 of Liberty's concise statement of facts), the Court granted Liberty summary

judgment to the extent that Privratsky was "not entitled to seek 'loss of use'

damages in this action," Dkt. No. 201 at 13.   Clearly, therefore, Privratsky "sued

for" loss of use damages in this action.   The fact that he was unsuccessful in that

attempt may not be held against Liberty.

The result is that $236,666.67 must be added to $1,233,433.00—the amount

no one disputes was "sued for" in this action, *see supra* n.6—which produces an

"amount sued for" of $1,470,099.67.   Next, to obtain the "statutory cap" under

Section 607-14, the Court calculates 25 percent of that figure.   This produces a

"statutory cap" of $367,524.91 (after rounding-down).

Third, the Court must decide a fee that is reasonable under Section 607-14 in

light of Privratsky's many objections in this regard.   Despite the many objections,

the Court finds one matter to be largely determinative.   Specifically, as more fully set forth below, the Court finds that the amount of attorneys' fees attributable solely to Count 1, which, in the April 2024 Order, the Court found to be a claim sounding in the nature of assumpsit, *exceeds* the statutory cap of $367,524.91, even after deductions are made to account for issues such as duplicative billing.   As a result, Liberty is entitled to the statutory cap.

In his objections to the F&R, Privratsky argued that, based upon his review of Liberty's billing entries, "at most," $231,185.00 is "even arguably related" to Count 1.   Dkt. No. 416 at 12.   Privratsky bases this estimation upon having done a "search" of Liberty's billing records for "eight discrete words", such as "lightning", and "the names of six experts" used during this litigation on Count 1. Dkt. No. 416-1 at ¶¶ 3-4.   In contrast, Liberty argues that, based upon its review of the same billing entries, $693,652.50 in fees is "entirely or primarily associated" with Count 1.   Dkt. No. 419 at 19 & n.14.   Liberty asserts that it reached this number after including fees related to subjects such as inspecting Privratsky's property, examining lay witnesses relevant to Count 1, and investigating Privratsky's photovoltaic system, all of which were "ignore[d]" by Privratsky's word search.   Dkt. No. 419-1 at ¶¶ 7-8.

The Court finds Liberty to have the better of this argument.   As Liberty indicates, Privratsky's search for talismanic words in the billing records is, at best, a limited means to determining the amount of fees attributable to Count 1.   The reason is perhaps obvious; any such search is confined simply to the words searched.   Here, Privratsky chose just eight words and six names for a cause of action that covered power surges, a photovoltaic system, palm trees, a gate operator, and the weather.   It also involved cross motions for summary judgment, many motions in limine, and jury instructions, to name but a few of the areas of frequent dispute between the parties on Count 1.   Privratsky's limited word search does not come close to encompassing these matters.   Liberty's approach, which focuses upon *subject* matter, as opposed to a few words, is a far more accurate means to determine the fees attributable to Count 1, not the least because it includes more matters relevant and attributable to that cause of action.   The Court, therefore, finds that, before appropriate deductions, the fees attributable to Count 1 amount to $693,652.50.

The next question is the reasonableness of the above-stated amount.   In recommending a reasonable amount, the Magistrate Judge reduced Liberty's requested hours for "excessive and duplicative billings", "block-billed" entries, "insufficient descriptions", and "clerical tasks" by, ten, twenty, five, and five

13

percent, respectively.    Dkt. No. 414 at 21; *see also* Dkt. No. 404 at 28-37.

Liberty did not object to these reductions.    Privratsky objected to one category of

reduction—for duplicative billing.    Dkt. No. 416 at 13-14.[7]    According to

Privratsky, the ten percent reduction for this category "should be significantly

higher—at least 35 percent[]" because this action "should have been defended with

no more than two attorneys" and because Liberty's prior counsel worked "less than

1/10th of the time" over a longer period.    *Id*. at 13-14.    Privratsky's contentions in

this regard border on silly.    No reasonable person actually associated with this

lengthy, protracted, and contentious litigation could come to the conclusion that

Liberty was required to staff the same with just two attorneys or face a charge of

wastefulness.    Similarly, for anyone aware of the course of this case,[8] there is a

very good reason why Liberty's prior counsel worked "less than 1/10th of the time"

compared to Liberty's current counsel: current counsel have done at least ten times

---

[7]While Privratsky initially objected to all of the categories, he "withdr[ew]" his objection to all but duplicative billing in the latest round of objections to the F&R.    Dkt. No. 416 at 13.    In light of the Magistrate Judge's detailed explanation for the reductions, Dkt. No. 404 at 28-37, the Court, therefore, finds no basis to disturb the same herein.

[8]Privratsky's arguments in this regard rely upon the opinions of Dennis King, an attorney licensed to practice in this State.    Dkt. No. 416 at 14-15 (citing Dkt. No. 390-1, which is Mr. King's declaration).    For the reasons stated herein, the Court places no credence upon Mr. King's declaration, which is devoid of this case's context.    In addition, *inter alia*, Mr. King provides no meaningful explanation for why current counsel's work should only have doubled from the work of prior counsel, *see* Dkt. No. 390-1 at ¶ 13, or why reducing the number of attorneys would have produced an appreciable change in the hours billed, *id*. at ¶¶ 11-12, at least beyond the reach of the *across-the-board* ten percent reduction applied by the Magistrate Judge.

14

the work, including on cross-motions for summary judgment on Count 1, extensive expert discovery, almost two dozen motions in limine, and, of course, the nine-day jury trial.   The Court, therefore, rejects Privratsky's assertion that a further reduction is necessary to correct for allegedly duplicative billing in this case.

When the Magistrate Judge's reductions are applied to the fees attributable to Count 1 as found above, *i.e.*, $693,652.50, the result is $416,191.50.[9]   One final matter merits observation with respect to reasonableness.   Privratsky also objects to six categories of fees on the ground that they "could have been avoided or were self-imposed."   Dkt. No. 416 at 17-18.   In opposition, Liberty offers argument with respect to three of these categories.   The Court starts, therefore, with the three categories for which both parties provide argument.   They involve fees concerning (1) the Maui Electric Company or MECO, (2) tracking payments Liberty made to Privratsky, and (3) travel for depositions.   Dkt. No. 419 at 24-25.   Upon review of both parties' arguments in this regard, the Court finds that none of these categories of fees are unreasonable under the circumstances of this case and the limited argument Privratsky presents.   Liberty is entitled, for instance, to pursue—and

---

[9]For purposes of clarity, to obtain this reduced number, the Court multiplied $693,652.50 by four different numbers: 0.2 (20%), 0.1 (10%), and 0.05 (5%) twice.   This produced, respectively, $138,730.50, $69,365.25, and $34,682.625 twice.   When those four numbers are added together, they produce $277,461.00.   Finally, when $277,461.00 is subtracted from $693,652.50, it results in $416,191.50—the reduced amount.

ultimately reject—certain theories that merit investigation but not presentation at trial. The remaining three disputed categories involve fees concerning (1) Liberty setting aside entry of default, (2) Liberty transitioning between law firms mid-case, and (3) electric vehicles Privratsky owned or, as described in his objections, "DMV Discovery". Dkt. No. 416 at 17-18. As observed, Liberty offers no defense for these categories of fees. Nonetheless, the first two categories—default and transition—are irrelevant to the reasonableness of the $416,191.50 or $693,652.50 amounts because, based upon the Court's review, Liberty did not include fees associated with either of these categories in the fees attributable to Count 1. Therefore, the Court finds the objections related to the default and transition categories to be moot. The last category—DMV Discovery—as Privratsky's supporting material indicates, *see* Dkt. No. 390-3 at ¶ 33, Dkt. No. 390-19, is attributable to Count 1. Nonetheless, given the lack of explanation by Liberty, the Court finds that this category, which amounts to eight hours of time and, more relevantly, $1,427.50 of fees,[10] shall be excluded from the fees attributable to Count 1.

---

[10]Again, for clarity, the eight hours of time was compiled by an attorney (5.7 hours) and a paralegal (2.3 hours), whom, respectively, the Magistrate Judge assigned billing rates of $200 per hour and $125 per hour. *See* Dkt. No. 404 at 17. When fed into a calculator, these hours and rates produce a total bill of $1,427.50--$1,140 for the attorney and $287.50 for the paralegal.

16

As a result, the Court finds that the total reasonable fees amount attributable to Count 1 equals $414,764.00 (the sum of $416,191.50 minus $1,427.50). Because this amount is *more* than the statutory cap, as found above, of $367,524.91, the statutory cap applies here.   *See* Haw. Rev. Stat. § 607-14 (providing that the amount awarded as attorney's fees "shall not exceed twenty-five per cent of the … amount sued for").   Therefore, for all of the reasons set forth herein, the Court finds that Liberty is entitled to a fees award of $367,524.91 pursuant to Section 607-14.   To that extent, Privratsky's objections, Dkt. No. 416, are OVERRULED and SUSTAINED IN PART, Liberty's objection, Dkt. No. 417, is SUSTAINED, the F&R, Dkt. No. 414, is ADOPTED AND OVERRULED IN PART, and the fees motion, Dkt. No. 385, is GRANTED.[11]

## CONCLUSION

For the reasons and to the extent set forth herein, Liberty's request to proceed, Dkt. No. 440, is GRANTED, Privratsky's objections, Dkt. No. 416, are OVERRULED and SUSTAINED IN PART, Liberty's objection, Dkt. No. 417, is SUSTAINED, the F&R, Dkt. No. 414, is ADOPTED AND OVERRULED IN PART, and the fees motion, Dkt. No. 385, is GRANTED.

---

[11]Privratsky also raises an objection related to "non-taxable costs".   Dkt. No. 416 at 16.   Neither the Magistrate Judge, Dkt. No. 414 at 22, nor this Court have awarded Liberty non-taxable costs. Therefore, the Court finds this objection to be moot.

Pursuant to HRS Section 607-14, Liberty is entitled to a fees award of

**$367,524.91**.

After entry of this Order, the Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated: August 11, 2026 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

---

*Shawn D. Privratsky vs. Liberty Mutual Fire Insurance Company*; Civil No. 21-00390 DKW-RT; **ORDER (1) GRANTING DEFENDANT'S REQUEST TO PROCEED, (2) OVERRULING IN PART AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS TO AMENDED FINDINGS & RECOMMENDATION (F&R) OF U.S. MAGISTRATE JUDGE, (3) SUSTAINING DEFENDANT'S OBJECTION TO THE F&R, (4) ADOPTING IN PART AND OVERRULING IN PART THE F&R, AND (5) GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES TO THE EXTENT SET FORTH HEREIN**