IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| SHAWN PRIVRATSKY,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Defendant. | Case No. 21-cv-00390-DKW-RT<br><br>**ORDER DENYING (1) MOTION TO STAY EXECUTION, (2) MOTION TO SEAL, AND (3) REQUEST FOR 21-DAY STAY** |

Plaintiff Shawn Privratsky moves to stay execution (stay motion) of an August 11, 2026 Order awarding Defendant Liberty Mutual Fire Insurance Company $367,524.91 in attorney’s fees (Order), without having to post a bond pending his appeal, without offering other monetary security, and without providing Liberty with any evidence of his financial wherewithal to satisfy the terms of the Order. Privratsky also moves to seal (seal motion) unidentified “financial information the Court may request in connection with the Stay Motion”, without submitting said information, as required by the applicable Local Rule. Finally, in his reply, should the Court deny the stay motion, Privratsky requests a 21-day stay in order to seek similar relief from the Ninth Circuit Court of Appeals.

For the reasons set forth below, each of Privratsky's motions and/or requests is DENIED. First, Privratsky provides no support for the proposition that a bond-free or "non-monetary" security is warranted under the circumstances here. Second, the seal motion is premised upon Privratsky being allowed to submit unknown "financial information" to the Court *ex parte*—something which the Court will not allow and denies, given the inherent unfairness to Liberty and the complete lack of support for the same. Third, Privratsky failed to request his 21-day stay in the stay motion, preventing Liberty from responding to the same, and also provides no support or even framework for such a stay under the circumstances here. Put simply, on this record, Privratsky is not entitled to a stay or to otherwise delay enforcement of the Order.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 62(b), after entry of judgment, a party is entitled to a stay "by providing a bond or other security." Here, Privratsky seeks a stay *without* providing a bond or other security, or, alternatively, providing "non-monetary security". In such a situation, the parties appear to largely agree on the framework applied by other district courts in the Ninth Circuit. Specifically, the parties both propose applying a five-factor test set forth in a decision of the Seventh

Circuit, *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988). Dkt. No. 445 at 7-8; Dkt. No. 455 at 6-7.[1]

The *Dillon* factors are: (1) "the complexity of the collection process"; (2) "the amount of time required to obtain a judgment after it is affirmed on appeal"; (3) "the degree of confidence that the district court has in the availability of funds to pay the judgment"; (4) whether the movant's "ability to pay the judgment is so plain that the cost of a bond would be a waste of money", and (5) whether the movant "is in such a precarious financial situation that the requirement to post a bond would place other creditors…in an insecure position." *Dillon*, 866 F.2d at 904-905 (quotation marks and citations omitted). It is the movant's responsibility to show that staying an order or judgment without bond is appropriate. *See id*.

Ultimately, the purpose of Rule 62(b) is to "preserve the status quo during a stay pending appeal of a district court decision…." *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 (9th Cir. 2000) (emphasis omitted).

## **DISCUSSION**

Upon review of the record presented, *none* of the *Dillon* factors favor Privratsky. For many, if not all of these factors, the reason is much the same:

[1]Privratsky also asserts that four factors set forth in *Nken v. Holder*, 556 U.S. 418 (2009), "independently" support a stay and/or constitute "an alternative equitable consideration within the Court's exercise of discretion under Rule 62(b)…." Dkt. No. 445 at 12; Dkt. No. 456 at 2. However, Privratsky also acknowledges that the Court need not consider the *Nken* factors. Dkt. No. 456 at 8 ("To the extent the Court considers traditional stay equities…."). Whatever may be the purpose of this "alternative" argument, because both parties agree that *Dillon* provides the "principal" framework, the Court applies *Dillon*, as they urge.

Privratsky has declined to present any evidence in support of the relevant inquiry. First comes the complexity of the collection process. As an initial matter, Privratsky focuses upon the wrong party when he argues that collection is not complex because *Liberty* is an "institutional judgment creditor". Dkt. No. 445 at 8. The relevant inquiry is, instead, on the nature of *Privratsky's* assets. They would, after all, be the assets upon which *collection* is sought and, thus, determine the complexity (or not) of the process. *See Dillon*, 866 F.2d at 905 (explaining that collection from the *movant's* "Corporate Payroll Fund" would be "guaranteed"). When properly oriented, this factor does not favor Privratsky because he has presented *no* evidence of the nature of his assets. It is, therefore, impossible to know how complex or not any collection process would be.

Second is the amount of time required to obtain a judgment. Again, Privratsky focuses upon the wrong inquiry when he asserts that the time to obtain a judgment would not be "meaningfully lengthened by the requested stay". Dkt. No. 445 at 8. Instead, the relevant inquiry is how long it would take to pay or collect on the judgment, *i.e*. for Liberty to collect on Privratsky's assets. *See Dillon*, 866 F.2d at 905 (explaining that the "entire process of payment of the judgment and fees and costs should take less than thirty days"); *cf*. *Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986) (affirming the denial of a stay without bond where, *inter alia*, "the procedure for collecting a judgment…is not only cumbersome and time-consuming,

but uncertain in outcome"). When oriented properly, this factor also does not favor Privratsky for the same reason as the first factor: without any evidence of Privratsky's assets, it is impossible to know how long it would take to obtain a judgment.

Third among the *Dillon* factors is the degree of confidence in the availability of funds. *On this record, the Court has zero confidence in the availability of funds to pay the $367,524.91 required by the Order*. In his reply, not even Privratsky claims any confidence in his ability to satisfy the Order. Dkt. No. 456 at 5 ("The third factor does not affirmatively support Plaintiff because he does not claim readily available funds sufficient to satisfy the judgment."). This factor clearly, therefore, does not favor Privratsky.

Fourth presents the wastefulness of a bond due to the movant's ability to pay. The answer is the same as the third factor. On this record, Privratsky's ability to pay the amount required by the Order is not plain or anything moderately close to it. And, again, Privratsky does not argue otherwise. Dkt. No. 445 at 9 ("this is not a case where Plaintiff's ability to pay is so plain that a bond would be a wasted formality….").[2] Because there is no evidence that, here, a bond would be a waste,

[2]Privratsky goes on to assert, though, that, here, an "inverse circumstance" "contemplated" by *Dillon*—the purported unavailability of a bond—exists. Dkt. No. 445 at 8. No such circumstance, however, is "contemplated" anywhere in *Dillon*.

but, instead, would appear to serve the underlying purpose of Rule 62(b) of ensuring the status quo, this factor also clearly does not favor Privratsky.

Finally, *Dillon* factor five concerns the state of the movant's financial situation. Again, Privratsky focuses upon the wrong target for this inquiry. Rather than asking whether his *creditors* would be placed in an insecure position if he was required to meet bond obligations, Privratsky instead asks whether *he* would be placed in an insecure position. Dkt. No. 445 at 9 (arguing that a bond would risk "financial strain on Plaintiff's other obligations"). Contrary to Privratsky's contention, *his* "other obligations"—none of which are identified—are not the focus of this inquiry. Instead, it is whether he has creditors and, if so, whether his financial state would place them in an insecure position. Neither of those matters—the existence of creditors or Privratsky's financial state—are given any evidentiary support on this record. Therefore, this factor also does not favor Privratsky.

With none of the five *Dillon* factors favoring Privratsky, the Court DENIES the stay motion, Dkt. No. 445.[3]

The seal motion, Dkt. No. 446, is also DENIED. As an initial matter, Privratsky has failed to comply with Local Rule 5.2, which governs the sealing of

---

[3]Although, as noted, the *Nken* factors have not been applied here, the Court further observes that, given the complete lack of support for Privratsky's positions in this regard, he has also failed to show that he would suffer irreparable harm, that Liberty would not be prejudiced, or that the public interest favors a stay without bond.

information in this District. In particular, Local Rule 5.2(c)(1) provides that, unless the district court orders otherwise, "the movant shall submit a copy of the proposed sealed filing with a copy of the motion." No copy, however, of the proposed sealed filing has been submitted here. In fact, beyond "any financial information the Court deems necessary", Dkt. No. 446 at 1, the Court has been left with no clue as to what Privratsky wishes to seal. Further, the entire premise of the seal motion is that Privratsky will not submit any proposed filing to the Court until the Court agrees to his demand for any such information to be submitted *in camera*. Dkt. No. 456 at 8 ("Plaintiff does not consent in advance to disclosure of the proposed in-camera submission".). **That is not how Local Rule 5.2 and the sealing of information works.** This alone is reason to deny the stay motion. Beyond the procedural infirmity in the seal motion, the Court is unconvinced that Privratsky may appeal to the Court's discretion, as in the stay motion, without the Court being afforded Liberty's full response to the same—something which inevitably requires Liberty to have access to the information Privratsky repeatedly refuses to offer it. After all, it is Liberty, not the Court, that will need to collect on Privratsky's assets should the Order be affirmed on appeal.

Finally, Privratsky's request for a 21-day stay of the Order so that he can seek similar relief from the Ninth Circuit is also DENIED. First, this request was not presented in the stay motion and, therefore, Liberty has not been afforded an

opportunity to respond. This is reason alone to deny the request. Local Rule 7.2 ("Any argument raised for the first time in the reply shall be disregarded."). Second, Privratsky sets forth no standard for the Court to address this request beyond stating that his request is "short" and will "permit orderly resort" to the Ninth Circuit. Dkt. No. 456 at 10. The Court disagrees that those two matters are relevant, particularly where, as here, the underlying stay inquiry discussed above, does not favor Privratsky in any fashion.

## CONCLUSION

For the reasons set forth above, the stay motion, Dkt. No. 445, and seal motion, Dkt. No. 446, are DENIED. Privratsky is also not entitled to a 21-day stay, as requested for the first time in his reply.

IT IS SO ORDERED.

Dated: October 9, 2026 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge